Marvin
v.
Stone.

W. J. & A. MARVIN *against* S. STONE, 2d, & D. HOP-KINS.

ACTION of *covenant*, tried at the Ontario Circuit, in June, 1822, before his Honor, (the late) Mr. Justice Platt, when a verdict was taken for the plaintiff by consent, subject to the opinion of the Court, on the following case, with liberty to either party to turn the case into a special verdict.

The declaration was upon an indenture made by the defendants, as follows :

*An executor assigns a judgment in favor of his testator, and covenants as executor, that so much is due upon it ; held, that the covenant is personal, and binds him in his own right*

In construing a covenant, it must be considered with the context, and must be performed according to the intention of the parties as derived from both.

Accordingly, where S. & D., two of H.'s executors, as such, assigned a judgment to M in favor of H. against E. who was also executor, and S. & D. covenanted, as executors, that *there was due and unpaid upon the judgment, to the assignors, at the time of the assignment*, $698; *held*, that the covenant was broken *eo instanti* that it was made ; for H. having appointed E. his executor, and he having accepted the trust, this extinguished the judgment, and *so* there was nothing *due* or *unpaid* thereon within the meaning of the covenant ; for the covenant meant, 1. that it *was due* : 2. that it was due to the assignors *as executors ;* 3. due at the time ; 4. due *upon the judgment*

It is a general rule, that if a creditor appoint his debtor his sole executor, or one of his executors, and the debtor accept the trust, this operates as a release or extinguishment of the debt.

But a qualification, universal as the rule is, that where there is a deficiency of assets to pay debts, the debt due from the executor is not discharged ; but shall be considered a part of such assets.

In the latter case, it has, in judgment of law, been paid to the debtor executor, and is considered as money in his hands.

Choses in action are, generally, not deemed assets till actually received by the executor.

But if he releases the debt, it is assets ; and he shall be adjudged to have received it.

The appointment, by a creditor, of his debtor an executor, is considered in the nature of a *specific bequest* to him of the debt, and as such must give way to creditors.

But a specific bequest takes preference of general legacies, and, as such, the bequest of the debt will be preferred.

On a deficiency of assets to pay debts, all the general legacies must abate proportionably ; but a specific legacy is not to abate at all, unless there be a deficiency without.

Whenever, from the whole will, it appears that the testator did not intend to discharge the debt, by making his debtor an executor, the latter is a trustee to the amount of the debt for the legatees or next of kin.

But making a judgment debtor executor with others, and in the will bequeathing all *judgments* that may be in the hands of his executors to others, does not show such intention.

The debt, when assets for legatees, &c. would be considered money in the hands of the debtor executor.

*Covenant.* Cases cited illustrating the proposition that though the letter of a covenant be fulfilled, yet an action lies, if its spirit and intent be violated. The *Attorney General*, *arguendo.*

NEW YORK,
May, 1824.

Marvin
v.
Stone.

" This indenture made the 17th day of November, 1819, between Simon Stone, 2d, an executor, and Doratha Hopkins, executrix of the last will and testament of Caleb Hopkins, late of Pittsford, in the county of Ontario, deceased, of the one part, and William Marvin, John Marvin, and Alexander Marvin, of Albany, of the other part. Whereas Caleb Hopkins, in his lifetime, did, in August term, A. D. 1816, recover by judgment in the Court of Common Pleas, in and for the county of Ontario, against Augustus G. Elliot, of Pittsford, aforesaid, the sum of 1000 dollars of debt, and also 10 dollars for his damages, as, by the record, &c. Now this indenture witnesseth, that for and in consideration of the sum of 698 dollars, &c., paid, &c., to the said S. S. executor as aforesaid, and the said D. H. as executrix as aforesaid, they have assigned, &c., to the said W. M., J. M. and A. M., &c., the said judgment, &c., and all the benefit and advantage, sum and sums of money, that may be had, obtained or gotten, by reason or means of said judgment, or any proceedings to be had thereon. And the said S. S. executor, and D. H. executrix, as aforesaid, do covenant with the said W. M., J. M. and A. M. that they have not received nor will they receive the said moneys due on the said judgment, nor any part thereof; and that there is now due and unpaid upon the said judgment, the said sum of 698 dollars ; neither shall or will release or discharge the same or any part thereof, but will own and allow of all lawful proceedings for the recovery thereof, they, the said W. M., &c., saving the said S. S. and D. H. harmless from all costs that may happen to them thereby. In witness, &c."

The declaration contained several counts in which the breach assigned was, that at the date of the indenture, there was not due and unpaid upon the judgment, the sum of 698 dollars ; but that the judgment was fully released and extinguished, and Elliot wholly discharged from the payment thereof, to wit, on the 27th day of February, 1818 ; because Caleb Hopkins, the plaintiff in that judgment, on the 26th day of September, 1817, duly made his last will and testament, and appointed Augustus G. Elliot, the defendant in that judgment, together with the defendants in this suit, ex-

ecutors thereof, and afterwards died without revoking the NEW YORK, same, and that Elliott accepted the appointment, duly proved May, 1824. the will, and took upon him the execution thereof. There Marvin was also a count assigning the breach generally, by negativ- v. ing the words of the covenant. Stone.

The defendants pleaded the general issue, and several special pleas, denying that Elliott was discharged from the judgment in manner and form as the plaintiffs alleged, affirming that, at the date of the indenture, there was due and unpaid on the judgment, 698 dollars, denying that Hopkins appointed Elliott his executor, and averring that Elliott did not accept the appointment of executor, and did not prove the will, and did not take upon him the execution thereof.

There was also a notice of special matter, to be given in evidence on the trial, viz. that the sum of 698 dollars was paid to the defendants by the plaintiffs, in consideration of their assigning the judgment against Elliott; that they assigned the same as executors of Hopkins, and received the money as such executors; and before any notice on the part of the plaintiffs, that they claimed the repayment of the money, they paid out and expended, the same in satisfaction and discharge of divers debts and demands against Hopkins, as assets in their hands, and above and beyond the assets in their hands; that the plaintiffs, having judgments and other incumbrances against the real property of Elliott, of a younger date, purchased the judgment in favor of Hopkins, in order to let in their judgments that Elliot always acknowledged the sum of $698 was due and unpaid upon the judgment, and always expressed his intention to pay it.

At the trial, the plaintiffs proved the indenture, and the will of Caleb Hopkins, dated 26th of September, 1817, by which a large real property, situated in the county of Ontario, was devised, and a large personal property bequeathed, subject to the payment of debts, and Elliott and Stone appointed executors. and Doratha Hopkins, executrix, which will was proved by one of the subscribing witnesses, on the 27th day of February, 1818, and letters testamentary then granted to the executors and executrix, named in the will. It was agreed that this will should be made a part of the

case. After bequeathing several legacies, it contained these words : " In addition to the above legacies or sums, I will and order, that all sums of money, bonds or *judgments*, that may be in the hands of my said executors, that have not been disposed of, in and by my aforesaid will, shall be equally divided between my two sons, &c., to be paid, &c. Also all lands, goods and chattels, that have not been disposed of by me, in the above will and testament, shall be equally divided between my two sons."

The defendants' counsel objected that they should not be put on their defence, until the plaintiffs showed that there were assets of Caleb Hopkins in their hands sufficient to pay his debts, or that there were no debts ; and also contended that the construction of this covenant was not as the plaintiffs supposed, that *the money was absolutely due and payable on the judgment*, but *that it had not been paid ;* and that the very words of the covenant showed, that its being collectable was uncertain and contingent. His Honor overruled the objections, reserving them, and directed the defendants to proceed with their defence.

A variety of evidence was then given by both parties, touching the question whether the defendants had fully administered the estate of their intestate ; whether there was a deficiency of assets ; and a deposition of Elliott was read by consent, stating that the Marvins had sold all his real estate upon junior judgments; that he intended to pay the judgment assigned to the plaintiffs ; but had been prevented by poverty, &c. But as the arguments went chiefly, and the opinion of the Court wholly, upon grounds independent of the defendant's evidence and the plaintiff's proof in reply, it is not deemed material to detail either.

Verdict for the plaintiffs for $800, subject, &c.

The cause was briefly opened by Mr. *H. B. Davis* for the plaintiffs, who confined himself to a statement of the facts and the points, which latter were as follows:

1. The covenant is *personal* upon the defendants.

2. It is broad enough for the case ; the true intent of the parties, and the legal construction of the covenant being,

that the judgment assigned was not released, extinguished or otherwise discharged ; that the amount was due and payable, and might without any existing legal impediment, be collected by the assignees.

3. The appointment by Hopkins of Elliott as his executor, and Elliott's acceptance of the appointment, was a release and extinguishment, or payment, in law, of the judgment.

4. If the judgment is not released, on failure of funds to pay debts, yet it can only exist as between creditors and executors of the testator, being assets in their hands, and could not be enforced by *scire facias*, by the defendants against their co-executor; and is wholly extinguished and inoperative in the hands of the assignees, who could not have execution on it for their benefit.

5. The evidence derived from the depositions of Elliott was improperly admitted, it being wholly irrelevant.

He was followed on the same side by

*Talcott*, (Attorney General.) There is nothing in the covenant, nor is there any evidence in the case, to show that at the time of purchasing the judgment, the plaintiffs had any knowledge that Elliott was an executor.

We admit that this sum of $698 was never actually advanced or paid by Elliott, or any person in his behalf, either to the testator or to his co-executors. The defendants contend that, therefore, it is " *due and unpaid,*" and so there is no breach of the covenant. We answer, that the debt, as such, is, in judgment of law, under the circumstances of this case, extinguished, paid or satisfied, so far forth, at least, that it cannot be said to be due within the true intent, meaning and spirit of the covenant.

The Court therefore will have two general questions presented to them : 1. What is the true construction of the covenant ? 2. Did the appointment of the judgment debtor as one of the executors, and his acceptance of the trust, produce such an affect upon the judgment, or the situation of the debtor, or the other executors in relation to it, as is inconsistent with the spirit and intent of that covenant ?

NEW YORK,     *First, then, as to the construction of the covenant.* Cov-
May, 1824.    enants are to be construed according to their spirit and in-

Marvin        tent.(a)  This spirit and intent is to be gathered from the
v.            whole context.(b)  The rule laid down, as taken from Po-
Stone.        thier, is: we ought to interpret one clause by the others
(a) 6 John.   contained·in the same act, 'whether they precede or follow
50.           it.(c)  If, after all, it remains doubtful which of two mean-
(b) 7 East,   ings is the true one, the law has then furnished 'another
240, 1. Com.
Dig.    Cove- rule.(d)  That construction is to be adopted which is most
nant, (D).    strongly against the covenantor, and most beneficial to the
(c) 2 Com.
on Cont. 532. covenantee.(e)
(d) 8 John.      Having ascertained by the application of any, or all of
406. Bac. Abr.
Covenant, (F). these rules, what the spirit and intent of the covenant are, it
(e) Co. Litt.
183.  2 Bos. & must be performed according to that spirit and intent ; and
Pull.  22.   9 a performance which is strictly according to the *letter* of the
East, 16.
              covenant, if it violate the spirit and intent, is as much a
              breach as if it violated the letter also.  If a man act contrary
              to the intent of the covenant, it shall be a breach though he
(f) 1 Sid.    perform the words.(f)  Examples : If I covenant to deli-
48. Com. Dig. ver so many yards of cloth, and I cut it in pieces, and then
Covenant, (D).
              deliver it, it is a breach ; for the law regards the real and
              faithful performance of all contracts.  So if one covenant
              to leave the trees on the land, and he cuts them down, and
(g) Com. Dig. leaves them there.(g)  The defendant, a common brewer,
Covenant, (F)
(E 1).  Sir. T. covenanted that the plaintiff should have seven parts of all
Ray, 464, in  the grains made in his brew house (for seven years) and af-
Griffeth    v.
Goodland;  &  terwards put great quantities of hops into the malt, of which
see Hopkins v. the grains were made, by means of which the grains were
Young,    11
Mass.    Rep. spoiled ; the grains were, however, delivered in this condi-
302.          tion.    Upon action of covenant, it was objected that it
              would not lie, because the covenant was fulfilled by the de-
              livery of the grains, and that the only remedy for the plain-
              tiff was an action on the case for that fraud.  But the Court
              held that it was the intent, that the plaintiff should have
              them for the use of his cattle ; of course, that he was to have
              them in such a state that his cattle would eat them; that
              when hops were mixed with them, cattle would not eat
              them ; therefore, though the grains were, in fact, delivered
              so as to comply with the *letter* of the covenant, they were

not delivered in such a state as to answer the spirit of it, and it was consequently broken, and the action maintained.(h)

To apply those rules of construction to the present case: To *whom* and *how* is the judgment due according to the covenant?

*To whom due.*—The defendants say that there is due $698 on the judgment. They described themselves as executor and executrix of the plaintiff in the judgment, to whom it would be due, if living. When, therefore, they represent themselves in the capacity of persons who have succeeded to the rights of him to whom it was due in his life, they, of course, represent that by virtue of their succession to *his* rights, it is now due to *them.* If they do not represent it as due to *them,* how came *they* to *assign it?* Can a man assign a debt *to which he has no title?* And when he assigns a debt, and covenants generally that it is due, does he not covenant that *it is due to himself who assigns it?* The spirit and intent of the covenant, therefore, is, that it is due *to them.*

Next, how and in what manner, and to what extent and effect due to them? *Due to them as debts of a testator* ARE USUALLY DUE TO EXECUTORS; for they disclose no circumstances in the covenant, to show that this is not an ordinary case.

*Due to them upon the judgment as such;* for such are the words of the covenant.

*Due to them in such a manner that they had a right to* ASSIGN IT; for they undertake to assign it. They covenant that they have not received, and will not receive any of the moneys due on the judgment, and will not release and discharge the same, or any part thereof.

*It was, therefore, a covenant that the debt was so due to them that they might receive the moneys, and had power to release and discharge the debt.*

They covenant to own and allow all lawful proceedings for the recovery of it, the plaintiffs saving them harmless from costs; these proceedings to be *in their names.* Else, why the covenant to *own* them? Else, why stipulate for an indemnity against *costs?* They would not be subject to *costs,* unless the proceedings were in *their names.*

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(h) 2 Jones,
191, *Griffeth*
v. *Goodland.*

NEW YORK, They therefore covenanted, in intent and meaning, that it
May, 1824. *was so due to them that lawful proceedings might proper-*
Marvin *ly be instituted in their names for the recovery of it.*
v.
Stone.      The spirit of the whole covenant, as gathered from the
context, is therefore this : That the debt is due to them as
debts are ordinarily due to executors, and so due that they
have the right and power to collect or discharge it ; and
that lawful and effectual proceedings for its collection may
properly be instituted in their names.

Having thus ascertained the spirit and intent of the cove-
nant, the next question is—

2. *Did the appointment of the judgment debtor, as one
of the executors, and his acceptance of the trust, produce
such an effect upon the judgment, or the situation of the
debtor, or the other executors, in relation to it, as is incon-
sistent with that spirit and intent ?*

The general rule is, that if a creditor appoint his debtor
his executor, such appointment, unless the executor renoun-
ces, will operate as an extinguishment or discharge of the
(*i*) Toller's debt.(*i*)   This rule is not peculiar to the common law, but
Law of Exrs. seems to be a rule of *general reason,* resulting from the na-
ch. 4, s. 9, p.
347. ture of such contracts, and adopted by every finished system
of jurisprudence. *Si debitor creditori vel creditor debitori
succedat, sine dubio, extinguitur obligatio ; una cum ob-
ligationibus accessoris pignorum et fidejussorum, eo quod
confusio talis pro solutione valet, ut nemo potest apud eun-*
(*j*) Voet, *dem pro eodem obligatus manere.*(*j*)   By confusion is
Pand. Lib. 16, meant the concurrence of two qualities, in the same subject,
tit. 3, s. 19.
which mutually destroy each other.   This takes place when
(*k*) Poth. on the creditor becomes heir of the other, or *vice versa.*(*k*)   The
Cont. part 3, same consequence ensues when the creditor succeeds to the
ch. 5, s. 1, &c.
1 Evans' Poth. debtor by any other title which renders him subject to his
425. debts ; and when the debtor succeeds, by whatever means,
(*l*) Id. to the rights of the creditor.(*l*)   In all these cases, the quali-
ty of debtor and creditor concur in the same person.

It is evident, that, by the concurrence of the opposite
characters of debtor and creditor in the same person, the two
characters are mutually destroyed ; for it is impossible to be
both at once,   A person can neither be his own creditor,

nor his own debtor. Hence, indirectly, results the extinction of the debt, when there is no other debtor ; for as there can be no other debt without a debtor, and the confusion having extinguished the character of debtor in the only person in whom it resided, and there being no longer any debtor, there cannot be any debt.

In accordance with these principles, Courts of common law have held, 1. That if the obligee of a bond make the obligor, his executor, this amounts to a release, at law, of the debt.(*m*) 2. The same consequence results, when the obligor (as here) is only *one of several executors ;* for one executor cannot maintain an action against another.(*n*) 3. The same doctrine applies to the case of a judgment debtor as to a debtor on bond.(*o*)

But it will be said, that to permit a testator to disappoint his creditors of the funds for satisfying their debts, by appointing his debtor executor, is against the principles of justice and equity ; and it has, therefore, been held, that the debt shall be assets in the hands of the executor, when the other assets are insufficient for the purpose of discharging those debts. It will then be contended, on the other side, that the assets in this case are insufficient; that, therefore, the debt itself is assets, from which the inference will be deduced, that the debt cannot be considered as extinguished, but that it is due and unpaid, within the covenant.

We admit the law to be so settled, and well settled. Assets, however, are to be presumed, till the want of them is proved. Here the want of them has not been proved. In truth the contrary appears. But if there were not sufficient assets, without this debt, so that the debt is considered as assets, it is so far from supporting the inference that the judgment is NOT discharged, that it is the very doctrine which, of all others, shows that the judgment, *as such, is* discharged ; for Elliott is accountable, *not in the capacity of judgment debtor*, but as *executor*. It is admitted that there may be found scattered through the books, expressions of Judges sometimes, at first view, apparently inconsistent with each other, and sometimes, perhaps, a little deficient in

NEW YORK, May, 1824.

Marvin v. Stone.

(*m*) 8 Co 136.

(*n*) Off. Ex 31. Plowd 204.

(*o*) *Thomas* v. *Thompson*, 2 John. 471.

NEW YORK, perspicuity. This has arisen from the difficulty of express-
May, 1824. ing without circumlocution, the precise effect produced upon
the debt, by constituting the debtor executor. But the cur-
rent of decisions has been uniform, and there is one princi
ple running through them all, viz. that the debt is assets, for
the payment of creditors. " It was never doubted but a debt
due from an executor to a testator shall be *assets in the ex-*
*ecutor's hands,* to pay debts."(p) And per Powell, J.(q)
"Some books say the *action* is gone, some say the *debt* is
gone, and some say the *debt remains ;* but they will be *all*
*reconciled by this, that the debt will be assets."*

It will be contended on the other side, that this debt is not
discharged because it is *assets.* It is material to inquire,
therefore, *what assets are,* and when and how a *debt* due to
the testator becomes assets ? " And it is to be observed,
that a right for which a good remedy by action is given, is
not yet assets, until it be recovered and reduced into pos-
session."(r) If a man is indebted, by obligation, £100, to a
testator, this obligation is not assets in the hands of the ex-
ecutors, until it be recovered by them.(s) Bonds and spe-
cialties are no assets till the money is paid.(t) Debts due
to a testator upon a judgment, statute, or specialty, are not as-
sets till actual recovery and receipt.(u)

This doctrine is also supported by the more modern au-
thorities. Toller(v) says, in relation to choses in action,
" The executor is entitled to the testator's debts of every
description, whether debts of record, as judgments, statutes
and recognizances,.or debts on special contract, &c., &c., and
all such debts, *when received* by the executor, shall be assets
in his hands. And it was held by Ld. Ellenborough, in 1815,
that debts due to an intestate are not to be considered as as-
sets, until actually paid ; and that, on a plea of *plene admin-*
*istravit,* it was necessary to prove that the amount had been
received.(w)

There are, indeed, some cases in which an executor must
account for a debt *as assets* which he has never *actually re-*
*ceived ;* but all these cases are put upon a ground which for-
tifies our argument, viz. that the executor has so conducted
as, in judgment of law, amounts to a receipt, and gives rise to

*Marvin*
*v.*
*Stone.*

(p) Per Ld.
Talbot Cas.
Temp. Talb.
241.
(q) *Wank-*
*ford* v. *Wank-*
*ford,* 1 Salk.
302.

(r) *Bredi-*
*man's Case,* 6
Co. 58, 59.
(s) Owen, 36,
Sav. 119, pl.
188, S. P.
(t) *Noel* v.
*Nelson,* 1
Vent. 96. 2
Vern. 299, S.
P. arg.
(u) Com.
Dig. Assets,
(D). Off. Ex.
92. Bac. Ab.
Executors,
&c. (H) 2 vol.
417.
(v) Toller's
L. Ex. ch. 3,
s. 1, p. 157.

(w) *Giles et*
*al.* v. *Dyson et*
*al.,* 1 Starkie,
32.

that presumption, *juris et de jure*, which is incapable of contradiction, that the debt has been received by him. Take the case of a *release* by him. *Per Periam,* "If an executor release an account, and it can be proved that so much was due, it is assets ; *for the law presumeth he hath received so much as he doth release.*"(x) If an executor release a debt, or discharge one in execution, it shall be accounted, in law, *assets received.*(y) Damages recovered may be assets, though never actually received, as by being released by the executor ; for this amounts to a receipt.(z) In no other case, therefore, is an executor liable for ·a debt. due to the testator, *as assets in his hands,* unless the debt has been actually received, or has been placed in such a situation that in judgment of law, *it is* considered as received.

Apply this doctrine to the present case. The defendants say the debt is assets. If so, the judgment itself has ceased to be an outstanding debt ; because, in order to become assets, it must be considered as *received ;* and here, as the same hand which is to *pay* is also to *receive,* in judgment of law, it is considered *as received:*

This is supported not only by the authorities already cited, but is strongly fortified by other courses of reasoning founded upon other classes of cases bearing upon the same point. Danby, Choke & Moile, Justices, held(a) that when a creditor makes his debtor and another his executors, and has no other goods but the same debt, the executor debtor shall be charged with the same to those to whom the testator *was indebted ; and he shall be charged to account for the same before the ordinary.* For *what* is an executor to account before the ordinary ? He is to declare what goods and chattels, belonging to the testator, *he has received,* and what debts and legacies he has paid. This shows that he does not account for the whole inventory already filed, but only for such part of it as has been actually *received,* or is deemed to be *received* in judgment of law. The Court, therefore, when they said he must so *account for his own debt,* must have held that the debt ·was, in judgment of law, to be considered as collected or *received* by him in his capacity of executor, and the money in his hands *as such.*(b)

*Margin notes:*

NEW YORK, May, 1824.

Marvin
v.
Stone.

(x) Bright-man v. Keighley, Cro. Eliz. 43.
(y) Per Hobart, Hob. 59.
(z) Off. Ex. 70.

(a) Plowd. 186.

(b) 2 Fonbl. B. 4 Pt. 2, ch. 3, sec. 4, p. 412, 2 ed.

NEW YORK,  Where there had been a decree against an executor to ac-
May, 1824. count, Ld. Eldon said,(c) " a debt due from an executor is
Marvin    assets, for the same plain reason, that an executor who is a
v.        creditor may retain.   The consequence seems necessary
Stone.    that under the usual decree against an executor, an interrog-
(c) Simmons  atory should be pointed to the inquiry, whether he has *as-
v. Gutteridge,
13 Ves. 264  sets in his hands arising from a debt due by himself.*

Again, it may be said, if an executor does not administer the amount of his debt, it is a *devastavit.*  An executor can be guilty of a *devastavit* in relation to debts due the testa-tor in *only two ways :*  1. Where he releases the debt, or does not take the proper measures to collect and receive it. 2. Where, when it is collected and received, he does not properly administer it.   An executor cannot take any mea-sures to collect and receive *a debt of himself.*   He cannot, therefore, commit a *devastavit* in the first manner by neg-lecting to take proper measures.   It must be committed in the second mode, and as that can only be done when the debt is collected and received, the debt in this case must, in judgment of law, be deemed to be collected and received by him, and in his hands as executor to be administered.

If the testator leave the executor a legacy, it is held to be a sufficient indication that he did not mean to release the
(d) L. Ex. debt due from the executor, and in such case, says Toller,(d)
350      the executor shall be a *trustee to the amount of the debt,* for the residuary legatee or next of kin.  No man can pro-perly be a trustee of a judgment *against himself, i. e.* of the *judgment itself.*   It is incident to a trust, that a *trustee,* should have the power of transferring or assigning the trust property to a *cestuy que trust* having the whole beneficial interest, unless specially prohibited from doing so, or unless the doing so would or might defeat the particular object of the trust.

Apply that doctrine here, and what shall we have ?  *an assignment of a judgment by the judgment debtor him-self!*  The *language of Toller* is scrupulously accurate and points to the very doctrine for which we contend.  He speaks of a *trustee to the amount of the debt,* not of the debt itself. Then that amount must be considered in his hands as execu-

tor, and received on the judgment. The result of the cases stated in Bridgman,(e) is, that if a debtor be made executor, the *debt* is totally extinguished. But it seems that it is only parting with the action; for the executor is considered as a *trustee* for the *money*, and such *money* is considered in *equity*, as part of the *testator's personal estate*. Here the ownership of so much money is taken from him, who owes in his private capacity, and transferred to his official capacity, so as to make a part of the fund which ought to receive it. Of course, then, the debt is paid to the fund.

Hence, because the debt is assets; because the executor is to account; because he may commit a *devastavit* in relation to it; because he is trustee of the money; and because the money ceases to belong to him in his individual capacity, but is considered part of the testator's estate; the debt must be considered, in judgment of law, received by the executor, the money in his hands as executor, and the judgment as such, therefore paid.

But we rest not solely upon these general principles, and inferences deducible from them, however convincing and irresistible we may think them to be. There are opinions of the ablest Judges directly in point. In *Wankford* v. *Wankford*,(*f*) the question was, whether the appointment of an obligor to be executor of the obligee, was such a discharge of the obligation that the administrator, *cum testamento annexo*, of the obligee, could not sue the representatives of the obligor after his death : *held*, that he could not; and, by Holt, for two reasons : 1. By the appointment of the obligor executor, he became entitled to receive the money, and he being the person who was to pay it, the same hand was to pay and receive, which operated an extinguishment. 2.(*g*) "That when the obligee makes the obligor his executor, though it is a discharge of the action, yet the *debt is assets*, and *the making him executor amounts to payment and a release*. If H. be bound to J. S. in a bond of £100, and then J. S. makes H. his executor, H. has actually received so much money, and is answerable for it; and if he does not administer so much, it is a *devastavit*." In *Stevens, admr.* v. *Gaylord*,(*h*) Jackson, J. (delivering the opinion of the Court)

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(e) Bridgm.
Index, tit. Executors, &c. X.

(f) 1 Salk.
305, 6.

(g) Id. 306.

(h) 11 Mass.
Rep. 269.

NEW YORK, says, " As soon as the debtor is appointed administrator, if
May, 1824. he acknowledges the debt, he has actually received so much
Marvin money, and is answerable for it.    This is the result with res-
v.
Stone. pect to an executor, and the same reason applies to an ad-
ministrator, as the same hand is to receive and pay, and
there is no ceremony to be performed in paying the debt,
and no mode of doing it but by considering the money to be
now in the hands of the party as administrator."   He after-
wards says, " The consequence is, that he and his sureties
in the administration bond, are liable for the amount of such
debt, in like manner as if he had received it from any other
debtor."

It would be a waste of time to enter into an argument to
show that if these authorities are to be relied upon, and the
amount is in the hands of the executor, as such, it amounts
to payment, as Ld. Holt says, and that the judgment which
has thus produced this amount in his hands, is not a judg-
ment due and unpaid.   One authority, however, even on so
(i) 12 Mass. plain a point.    It is said in *Winship* v. *Bass et al.,*(i)
Rep 201. " there is no doubt that formerly by the common law of
England, when a debtor was made executor, the debt was
discharged, unless a different intent of the testator could be
inferred from the will itself.   The reason given in some of
the books is, that the same person is to pay and receive, and
as the executor cannot maintain an action against himself
the *debt shall be considered as paid.*   But to avoid manifest
injustice to creditors, the same law held that the debt *thus
considered to be paid*, should be assets, &c."   Again ; speak-
(j) Id. 203. ing of an administrator,( j) " the remedy at law may be sus-
pended during his administration, but will revive after it
ceases ; and indeed he may be charged on his administration
bond as having received the amount of his debt ; for hav-
ing voluntarily assumed the trust which prevents any other
from receiving, and being unable to sue himself, he shall be
considered as having paid the debt, and holding the amount
in his hands as administrator."                        o

If, after this, it can be supposed the *judgment against El-
liott* is to be considered, in point of law, due and unpaid,
we ask to whom is it due ?   To Elliott himself ?   " A man
cannot be his own creditor and his own debtor, and if so, the

other executors had no interest, and could not assign." To the other executors? " One executor cannot owe his co-executor in that capacity. They cannot sue each other.(k) After Elliott's death, they could not sue his representatives. They are not liable for *his devastavit* as to this debt. They are not liable to account to creditors for it; for they cannot collect it, and having no personal interest in it themselves, it cannot be due *to them*. To the creditors of Hopkins? How? to all jointly—the whole? or each proportionably according to his debt? Shall each one sue him in *debt on judgment*, or can any one sue him in *debt on judgment*? No one can tell to whom this judgment, as *a judgment debt*, is *due*, and support that opinion either by reason or authority.

*J. C. Spencer*, for the defendants, made the following points:

1. The appointment of Elliot an executor, did not absolutely discharge the judgment.

2. If it did, it would not be a breach of the covenant.

3. If the covenant imports that the judgment was valid and subsisting, it is satisfied by the facts in the case, showing a deficiency of assets; and also by its being valid in equity for the next of kin.

4. In any event, the plaintiffs being volunteers, cannot question the validity of the judgment.

He said that considerable reliance might be placed, in the conclusion, upon the assumed fact, that the real estate was devised to the executors for the payment of debts; but we contend that such is not the true construction of the language in the case. The words are, " by which a large real property, situated in the then county of Ontario, was devised; and a large personal property bequeathed, subject to the payment of debts." We say, the expression, *"subject to the payment of debts,"* applies only to the last antecedent, *personal property*. In *Eagles* v. *Carey*,(l) the expressions, " I will all my debts shall be paid before any of my legacies, or gifts hereinafter mentioned," were held not to charge the testator's land with the payment of debts. We

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(k)   Toller
L.  Ex.  348
Book 3, ch. 4,
sec. 9.

(l)  1 Vern.
457.

deem it only necessary to refer to the whole will, to show that the testator never devised his real estate to pay his debts, and we contend, that if any ambiguity arises from the language of the case, it is entirely removed by a reference to the will.

But whether there were assets or not, for the payment of debts, we hold to be quite immaterial. The judgment against Elliott was as much assets for the next of kin, as for creditors; and creditors and next of kin stand precisely on the same footing. If this judgment can be made available to either, the words of the covenant are satisfied.

The authorities cited, as collected in Bridgman's Index, (*m*) are *Hudson* v. *Hudson*,(*n*) and *Wankford* v. *Wankford*. (*o*) The language of the Chancellor in *Hudson* v. *Hudson*, is certainly very strong, that the debt is totally extinguished. But it is to be remarked, that this was used by way of argument, and was not a decision on any point in the case; and, what is remarkable, the very next case in Atkyns, *Fox* v. *Fox*,(*p*) is a decision on the very point, directly the contrary, viz. that, notwithstanding at common law, the making an obligor executor extinguished the debt; yet, in this case, the *bond* shall be considered as assets in the hands of the executor, to be applied, after paying funeral expenses and legacies, to the exoneration of the real estate, in favor of the heirs." This is a very strong case. It proceeds upon the familiar principle in equity, that the heir has a right to call on the executor to apply the personal estate in discharge of a mortgage, as the first fund.(*q*)  The Chancellor, in *Fox* v. *Fox*, makes the bond of the executor personal property, applicable to the payment of funeral expenses and legacies, and belonging to the heir; but this could not be so, if it were *absolutely extinguished*, in the language used in *Hudson* v. *Hudson*. That language, then, should be taken with the qualification annexed in *Fox* v. *Fox*, at *common law*, and then the case of Hudson proves nothing.

The case *Wankford* v. *Wankford*, so much relied upon by the Attorney General, merely proves, what has not been denied, that, at *common law*, an action cannot be sus-

(*m*) Tit. Executors, &c. pl. X.
(*n*) 1 Atk. 461.
(*o*) 1 Salk. 299.
(*p*) 1 Atk. 463.
(*q*) Bridgm. Index, tit. Estate, real and personal, H.

tained on a bond given by an executor to his testator; al-
though the *reasons* given are extremely questionable, and
may induce the Court to relax the rule, "according to the
exigencies of society, and the lights and improvements of
the age." Yet it not denied that the older authorities are
so. But, in that case, the observations of Powell, J. at
page 302, are worthy of remark. "He said that some
books say, the action is gone, some say the debt is gone, but
they will all be reconciled by this, that the debt will be as-
sets." Probably the true question between the parties on
this part of the case is, what is meant by the books' saying,
*the debt is assets in the hands of the executor?*

The Attorney General has cited several cases to show the
meaning of the term *assets*, and that a debt is not to be
deemed assets, until it is collected. In *Termes de la Ley*,(r)
"*assets* are said to be, when a man makes executors, and
leaves them sufficient to pay, or some commodity, or pro-
fit is come to them in right of their testator." Toller(s) says,
"the personal property that is of a saleable nature, and may
be converted into ready money, is called *assets* in the hands
of the executor or administrator, that is, *sufficient*, from the
French *assez*, to make him chargeable to a creditor and
legatee, or party in distribution, as far as such goods and
chattels extend;" and in the case of *Fox* v. *Fox*, before
mentioned, it will be observed that the Chancellor calls the
*bond* assets in the hands of the executor, to be applied for
the benefit of the heir. There are a great variety of cases
where executors are made chargeable as for assets, that
never came to their hands; as where by negligence or delay
in collecting debts, or prosecuting for them, they have be-
come desperate;(t) all which would seem to show, that a
security may be assets, before it is collected; and, in this
case, why is not the judgment against Elliott as much assets
in the hands of the other two executors, Messrs. Hopkins
and Stone, as in Elliott? Could they avoid accounting for
it to creditors, by saying that it was *not assets*? It is doubt-
less true, that in the cases cited by the Attorney General,
particularly those from Massachusetts' Reports, the Courts.

*Margin notes:*

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(r) Tit as-
sets.

(s) L. Ex
137.

(t) Toll. L.
Ex. 427.

NEW YORK,  have said that they will hold the executor liable for the debts
May, 1824.   he owes his testator, as assets in his hands, on the ground

Marvin     that *he is presumed to have paid himself.*  In the case of
v.         a solvent and responsible executor, as all those cited appear
Stone.     to have been, this was sufficient for the purposes of the suit.
But because the Courts have, in such cases, made that presumption, it by no means follows that such is the only ground of the liability of the executor ; or that such liability is limited to his personal responsibility only. It is sufficient to say, that in none of the cases, was the question presented, whether the Courts would enforce a security which was valid, and would be effectual against the property of an executor, who was insolvent, and against whom there were no other means of proceeding to collect the debt ?

The Attorney General contends, that the executor is liable *quasi* executor, and not as *debtor ;* Toller,(*u*) gives the reason why the debt of an executor shall be assets to pay creditors, viz. that it is highly unreasonable that the claims of creditors should be defeated by a release absolutely voluntary; and the same reason is given in 2 Black. Com. 512 ; but upon the ground taken by the Attorney General, the object of the rule of law would entirely fail in every case, where the executor was insolvent, although a valid and sufficient security for the debt *existed ;* for though, according to his doctrine, the testator cannot release the executor, as it would be a fraud on his creditors, yet he may discharge the only remedy for collecting the debt. In other words, he would be permitted to do that indirectly, which he is not allowed to do directly.

In many of the cases cited on the other side, and in all the elementary books, the executor is called a trustee for creditors, legatees and the next of kin, and there is no doubt he is such. Now the securities and liens which a trustee has, are incident to the principal trust, and belong as much to the *cestuy que trust,* as the debt itself.(*v*)  If A. should assign to F. in trust for B, a debt owing by Z. of $500, which is secured by a mortgage, can there be a doubt that B; would be entitled to compel the trustee F. to foreclose the mortgage if it was necessary to collect the debt? The very point is

(*u*) L. Ex.
349

(*v*) *Moses* v.
*Murgatroyd,* 1
John. Ch. Rep.
127, 128.

decided in *Jackson* v. *De Lancey*.(w)  Kent, J. says, in that case, " Even if the technical legal estate in the mortgage, had descended to the heir, he would have been but a mere trustee for all the children, to whom the beneficial interest was devised; and they would have been entitled to use his name to recover the money, or to *foreclose the mortgage*, or to gain possession."  The case cited by him in 2 Vesey Senior, p. 45, is to the same point.  If it had been the mortgage of the heir himself, it is presumed it would have made no difference.  The powers of a Court of Equity would have been abundantly sufficient to enforce the security.  The case of *Orr* v. *Kaines*,(x) shows that where an executor is insolvent, the Court will make a legatee whom he has paid, refund.  In *Crane* v. *Drake*,(y) a creditor was allowed to pursue the specific fund sold, to a purchaser.  If, then, the executor be a trustee for creditors, and next of kin, to whom the debt belongs, why should not a mortgage given by him, be enforced for their benefit, if it was the only means of collecting the debt?  And if a mortgage, why not a judgment?  The technical difficulties arising from the executor being defendant, and the representative of the plaintiff, if they are insurmountable at law, are easily overcome in Equity, where a bill might be filed to charge the land held by such judgment.  It is an old head of Equity, that the Court will lend its aid to enforce judgments at law, where there are any obstructions.(z)  Its jurisdiction will be exercised whenever, upon principles of universal justice, the interference of a Court of Judicature is necessary to prevent a wrong, and the positive law is silent.(a)

The familiar case of a judgment and execution creditor, seeking the aid of a Court of Equity to charge choses in action, that had been fraudulently assigned, and could not be levied on by execution at law, is in point to show the power and practice of that Court, in enforcing judgments at law; and the case of *Egdell* v. *Heywood*(b) is very much in point, to show that when the remedy at law is obstructed, in consequence of technical difficulties, equity will interpose to give effect to a judgment at law, and on the express ground that the ordinary remedies there cannot be had.  Thus, a

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(w) 1 John
Rep. 559.

(x) 2 Ves
Sen. 194.

(y) 2 Vern
616.

(z) Mitf. Pl.
2d ed.    103,
104, ch. 2, s.
2. Coop. intr
to his essay on
Pl.  in   Ch
xxxiv.
(a) 1 Fonbl
11.

(b) 3 Atk
352.

NEW YORK,
May, 1824.

Marvin
v.
Stone.

(c) Sugd. L.
v. 162

(d) Simmons
v. Gutteridge,
13 Ves. 262.
Askwirth    v.
Chamberlain,
1 Ch. Rep. 138.
Field v. Clark,
id. 242. Carey
v.  Goodinge,
3 Br. Ch. Cas.
110.    Bennet
v. Bachelor, id.
28.  Brown v.
Selwin,  Cas.
Temp.   Talb.
240.    4 Br.
Parl.    Cas.
179, S. C. Er-
rington v. Ev-
ans, Dick. 456.

(e) Cas. Temp.
Talbot, 240. 4
Br. Parl. Cas.
180, and vid.
Fort. 240.

(f) 11 Ves. 87.

bond from a woman to her intended husband is enforced in Equity, although void at law, and extinguished by the in termarriage.(c)

If this reasoning, and the inference from the authorities be correct, then is it established that a creditor of Hopkins, in case of a deficiency of assets, would be entitled to the aid of a Court of Chancery to enforce the judgment against Elliot's lands; and, of course, the judgment must be valid, due and unpaid, if there were such deficiency of assets.

Without now entering into that question, we contend that the *next of kin* stand in the same situation with creditors and legatees; and are equally entitled to the remedies which a creditor may have.

The position taken on the other side, that the appointment of a debtor executor, is a specific bequest, is conceived, at this day, to be entirely exploded. The authorities clearly establish that he is merely a trustee; that his name implies it.(d)

The remark in Toller, 350, that an executor has a right to his debts exclusive of legatees, rests upon 2 Bl. Com. 512 and Hargrave's note on Co. Litt. 264, a. Blackstone, in the place cited, states the doctrine, and refers to Salkield, 303, which is the case of Wankford, and contains no such rule. Hargrave, in his note, considers the appointment of an executor, as a specific bequest to him, to *pay the debt*, but does not say a word as to his having a preference over the legatees. Toller, keeping in view this idea of the executor being an exclusive legatee, proceeds to state several cases of *exceptions* in Equity, and to give the reasons for them: and, so far from the rule being as he states it, the case of *Brown* v. *Selwin*,(e) is in point to show that the executor is a trustee even for a *residuary* legatee, and must account to him for his debt. We say that the cases he puts as exceptions, with many others already cited, show the *rule itself*, in Equity, to be different from what he states it; and prove that the executor is not considered a legatee in that Court. For instance, the case of *Berry* v. *Usher*,(f) cited on the other side, is put by Toller on the ground that, "although without a legacy, (to the executors) yet it appearing, by the

tenor of the will, that the testator considered him in the light of a mere trustee of his whole property, his debt was clearly held not to be discharged." This case was directly opposed to Toller's rule, and he was bound to get rid of it ; and if he cannot do this, it must overthrow the rule. Now he has assigned a ground of distinction, which none of the able counsel in the case thought of; which the Master of the Rolls does not recognize, or even allude to, and which is really unfounded in fact. Upon examining the case it will be seen, that Usher had many and various duties to perform, as *executor*, such as payment of money and interest to two persons, for long periods. Toller also quotes the case of *Fox* v. *Fox*, with a " so where," &c., as if that was a case of an executor being a mere trustee ; whereas that case cannot possibly be reconciled with this rule, nor explained upon any of the exceptions which he has stated ; and it is utterly at war with Hargrave's idea of a specific bequest to pay the debt. Toller also cites the case of *Carey* v. *Goodinge*,(*g*) as an exception to his rule, and puts it upon the ground of legacies having been given to the executors, as a sufficient indication that the testator did not mean to release the debt. Now, although it is true legacies were given in that case, yet that does not appear to have occurred to the counsel for the defendants, as being worthy of their notice, and the Chancellor, Lord Thurlow, gives no such reason, but says expressly, that the appointing of a debtor executor *was no more than parting with the action*, which he thought had been a settled point ; and, therefore, declared the debt of the executor a trust for the next of kin. What right has an elementary writer to assign a reason for a decision which the Court not only did not give, but which would make the decision proceed upon a ground so different from that given by the Court, as in effect to contradict it ? We rely much upon this case, and upon the reason assigned by the Chancellor, and we consider it conclusive until it is shown to be overruled.

(*g*) 3 Br Ch Cas. 110.

The last clause of the will disposes of " all sums of money, bonds or judgments, lands, goods or chattels, not before bequeathed or devised, to the two sons of the testator."

These bequests, we contend, are broader, if possible, than *" all the rest and residue of my estate,"* and that they make the two sons legatees of the judgment against Elliot. These legacies meet completely even the rule laid down by Toller, at page 350. They not only furnish a " strong inference" that the testator did not intend to bequeath the debt to Elliott, but they afford irresistible evidence that he meant to give it to his sons. In addition to the cases cited by him, I would add *Errington* v. *Evans*,(h) where it is said, " if an obligee makes an obligor *one* of the executors, and takes no notice of the bond, but devises the residue of the estate to others, I am clear it is not an extinguishment of the debt, though at law it will be so, because a personal demand, once suspended, is not to be resumed." The latter part of this remark, it is contended, would be applicable only were we seeking to enforce a judgment in a Court of law. But we ask no such thing. We say that if it can be enforced in Equity, it is sufficient to satisfy the words and the spirit of the covenant; and if it be valid in Equity, for the benefit of legatees, then we say the executors would be decreed trustees for their benefit ; and that its being a lien on land would be an incident attending that trust which a Court of Equity would sustain and enforce, if the benefit of the trust can be obtained only in that way. The authorities already cited, and the arguments urged, we think establish that a Court of Equity would declare the judgment a lien on the lands of Elliott.

(h) Dick. 456.

*Talcott*, (Attorney General,) in reply. The ground is not materially changed by the argument for the defendant. Most of it had been anticipated ; and, indeed, the greater part of t'e principles it contains, as deducible from cases, were insisted upon as favoring the plaintiffs rather than the defendants.

As to the construction of the will in relation to the real estate, the Court will judge from an inspection of i . But even admitting the construction contended for by the defendants to be true, it could make no difference with the case, *in principle.* For a moment let us examine the origin and reason of the English doctrine, as to marshalling assets.

It grows out of a set of familiar principles. 1. The heir cannot be disinherited by implication. 2. The *real estate* is not liable for the payment of the ancestors' debts, (except in cases of liens,) unless expressly charged with them ; but debts and legacies must be paid out of the *personal proper-ty.* 3. The will of the owner of property is to be carried into effect, when not contrary to law:

NEW YORK, May, 1824.

Marvin v. Stone.

When a man dies, justice requires, in the first place, that his debts should be paid. If he has given a legacy in his will, he of course intends that the legatee should have it, and after the payment of debts, the claim for the legacy must be satisfied. If, however, he makes no provision for the payment of the debts or legacies out of his real estate, the common law of England presumes that the legacies were given under an idea that the personal estate was sufficient for all purposes. If it turns out otherwise, the legacies must abate, because they were given under a mistake ; and it was not the will of the testator that the legatees should have them *at all events,* but only in case the personal estate was large enough to pay debts and legacies too. If the testator charges his debts on his *lands,* then the performance of his will does not depend solely on his *personal estate,* and Equity very properly marshals assets in favor of legatees. But in this state the law itself subjects the real estate of the testator to the payment of his debts ; and if, in England, Equity will marshal assets, whenever the real estate is so subjected, why not do it here ? What difference in principle does it make, whether it is so subjected by the act of the par-ty, in a *particular case,* or by the act of the law which ap-plies to *all cases ?*

But, says the counsel, this is all immaterial ; for, admit-ting there are sufficient assets to pay all debts, still this judg-ment is as much assets for *the next of kin,* as for *creditors,* and should be distributed among them. For this he relies on the case of *Fox* v. *Fox.*(i) That case, upon an examin-ation, will be found to have proceeded upon its peculiar cir-cumstances ; and to show that the case itself is not consi-dered, in England, as furnishing the general rule, but rather as an exception to the general rule, it is necessary only to

(i) 1 Atk 463.

refer to 11 Vesey, Jun. 90, note (*a*) where it is said, of this case, " *Under the circumstances of Fox* v. *Fox,* the executor could not be permitted, in Equity, to avail himself of that character, *at the same time insisting upon his mortgage, the only consideration for which was the debt."* It is true that where a debt is due from an executor, a Court of Equity, under the particular language of the will, many times raises a trust for residuary legatees, and even for next of kin ; but the true rule is that laid down by Toller, Blackstone, Hargrave, and indeed, by all the elementary writers, and is substantially this : that making the debtor executor is, *prima facie,* a bequest to him of the debt ; but this legacy will not be permitted, any more than other legacies, to interfere with the payment of *debts ;* yet being in the nature of a *specific* legacy, it will, in general, and unless there is some peculiar provision or language in the will, take precedence of legacies *at large ;* and so, too, it will take place of the rights of the next of kin, unless the phraseology of the will is sufficient for a Court of Equity to raise a trust in their behalf.

The cases put as exceptions, by Toller, &c., are, in truth, so ; and the remarks made upon them, by the counsel on the other side, when compared with the cases themselves, will be found erroneous. The case of *Berry* v. *Usher,* was a case of clear trust.

But it is said that the provisions of the will, in this case, show that, as to this judgment, the executor was a trustee only. The clause alluded to is that directing " that all sums of money, bonds or *judgments, that may be in the hands of my said executor,* that may not have been disposed of, in and by my aforesaid will, shall be equally divided between my two sons."

But this clause extended only to judgments in the *hands of the executors.* Now the judgment in this case never could be in the *hands of the executors.* As to Elliott, it was not a judgment in his hands as such. (A judgment is in the hands of a plaintiff, *or some person claiming under him,* not in the hands of the *defendant.*) It was not in the hands of the other executors. They could not sue it, or institute any proceedings for its collection. It was not, therefore con

templated by that language of the testator. But suppose it had been; was it a judgment so due and unpaid that the executors had a right to *assign it*, when the will directed them to divide it between the two sons?

But if it is assets, as contended by the defendant, still, we repeat, the judgment debt, *as such*, is considered as paid, and the amount in the hands of the executor, *in his capacity of executor*.

But to this it is objected, that it would, in some cases, drive the creditors of a testator to rely on the personal security of an executor, who might be insolvent. This objection might be made to the general power of an executor, in ordinary cases. He has always the power to discharge a judgment obtained by the testator. He, by this, however, may make himself liable for a *devastavit*. So where the judgment is against himself, if he does not pay it, he is liable for a *devastavit*, and the same remedy exists against him in the one case as in the other. The doctrine as to the right to securities by a *cestuy que trust*, is inapplicable to the case of executors, and furnishes no limitation of their powers.

It seems to be admitted, on the other side, by the remarks on *Errington* v. *Evans*,(*j*) and other remarks in the course of the argument, that the debt is *extinguished at law;* but the counsel contend, that it is not extinguished *in Equity*. Here it must be remembered that the question is a question *at law*, and must, therefore, be decided by the *rules of law*, and not by any different rules of Equity.

(*j*) Dick 456.

But how could the claim be enforced in equity? Not as a judgment. The cases where Courts of Equity interfere to assist a judgment or execution, are cases where the party has a right to an execution on the judgment. He is then helped by the intervention of a Court of Equity to reach property which he could not otherwise reach; but the Court will not give him a right to issue execution on an extinguished judgment, for the sake of helping him to take a particular species of property, or otherwise, when he has no right to take any kind of property by such process.

But who could apply to a Court of Equity in a case like this ? Not the *other executors ;* for they have no interest in the debt. They have no power to collect it, are not accountable for it, and though the non-payment of it by Elliott should be a *devastavit* in him, an executor is liable only for his own *devastavit* and not for that of his co-executors. The other executors, therefore, being without interest in the subject matter, could not maintain proceedings in Equity, (whatever creditors or next of kin might do,) and if so, they had not the power to assign any such right ; and, as to them, the judgment is extinguished in Equity as well as at law.

Again : even admitting Elliott to be a trustee, the other executors are not *cestuy que trusts.* If he is a trustee, he is for creditors, legatees, or next of kin. Now no person can assign an interest in trust property, but the trustee or *cestuy que trust ;* and as the defendants were neither, they had nothing to assign. And it seems to be very clear, that where a person is neither the absolute or conditional owner of a debt, not a trustee or *cestuy que trust* of it, there is nothing due to him ; and if he covenant that the debt is due to him, (as the fair, and only fair interpretation of this covenant,) the covenant is broken *eo instanti* that it is made.

*Curia,* per SUTHERLAND J. (after stating the facts.) The case turns upon the construction of the covenant, and the effect and operation of appointing Elliott an executor. There is no dispute as to any material fact. The covenant was not denied, on the argument, to be a personal one upon which the defendants are responsible in their individual character, and not as executors.

1. What, then, is the true construction of the covenant? It is unnecessary to cite authorities, to show the rule of interpretation, that the whole covenant, with its context, is to be taken into consideration ; and that is to be considered the covenant, which, from such consideration appears to have been the true intent and meaning of the parties. If the intention of the parties be doubtful, that construction is to be adopted which is most beneficial to the covenantee. Testing this covenant by these rules, and there can be no doubt,

NEW YORK,
May, 1824.

Marvin
v.
Stone.

1. That if the judgment assigned was satisfied or extinguished *by operation of law*, it was as much a breach of the covenant as though it had been paid in money or discharged by a release ; for if it was satisfied, in judgment of law, neither the sum of $698, nor any other sum, was due upon it : 2. That the covenant implies that the sum due and unpaid is *due to the covenantors* at the time of the assignment : 3. That it was due to them as the representatives of Caleb Hopkins, the plaintiff in the judgment : and 4. That it was due upon the judgment.

2. The breach of the covenant is said to be the necessary result of the judgment creditor's appointing the judgment debtor one of his executors, and his acceptance of the trust.

It is undoubtedly true, as a general rule, that if a creditor appoint his debtor his executor, or one of his executors, and he do not renounce the trust, such appointment shall operate as a release or extinguishment of the debt, or the action for it, upon the ground that such must have been the intention of the testator ; because, by making the debtor an executor, he voluntarily destroys the only remedy or means by which the debt can be collected. The rule is universal, that when the remedy is suspended by the act of the party entitled to it, it is destroyed forever. The consequence is the same, if the debtor is a co-executor with others ; for one executor cannot sue another. (*Thomas* v. *Thompson*, 2 John. Rep. 471. Toll. L. Ex. 272, Lond. ed. 1800, ch. 4, s. 9. 8 Rep. 136. Bac. Abr. Executors, &c., (A) 10. 2 Bl. Com. 512. Plowd. 184. *Wankford* v. *Wankford*, 1 Salk. 299. 11 Mass. Rep. 259. 12 id. 201. Off. Ex. 31, 32.)

But there is one qualification as universal as the rule itself ; that where the testator does not leave funds sufficient for the payment of his debts, the debts due from the executor shall not be discharged ; because the testator shall not be permitted, by a *voluntary release*, to defraud his creditors of their just claims. In such a case, therefore, the debt due from the executor, shall be considered assets in

his hands, for the payment of the debts of the testator. By considering it assets, the difficulty is avoided as to the means of enforcing payment. It cannot be assets in the hands of the executor, until it ceases to be a debt due to them, and has, either *in fact, or in judgment of law,* been paid to, and received by them. *Choses in action, or debts due to the testator upon judgment, statute or specialty,* are not assets till actual recovery and receipt. (6 Rep. 58. *Noel* v. *Nelson,* 1 Ventr. 94. Com. Dig. assets, (D). Bac. Abr. Executors & Administrators, (H) 2. Toll. L. Ex. 272. 1 Starkie, 32. 2 Vern. 299.) If an executor release a debt due to the testator, in judgment of law, he shall be considered as having received it, and it shall be assets in his hands. (*Cocke* v. *Jennor,* Hob. 66. Cro. Eliz. 43.)

If, then, there be a deficiency of assets, in this case, and of consequence, the debt due from the executor becomes assets, in judgment of law, is ceases to be an outstanding debt, and becomes money in the hands of the executor. The judgment against Elliott, therefore, was paid and discharged; and the covenant of the defendant, that the sum of $698 was due and and unpaid, was broken.

The opinion of Holt, Ch. J. in *Wankford* v. *Wankford,* (1 Salk. 306,) is explicit upon this point. He says, " when the obligee makes the obligor his executor, though it is a *discharge of the action yet the debt is assets*; and the making him executor, does not amount to a legacy, but *to payment and a release.* If A. be bound to B. in a bond for £100, and then B. make A. his executor, A. *has actually received so much money,* and is answerable for it. And if he do not administer so much, it is a *devastavit.*

This subject is very ably and perspicuously treated by Mr. Justice Jackson, in *Stevens* v. *Gaylord,* (11 Mass. Rep. 259.) In page 269, upon this particular point, he says, " as soon as the debtor is appointed administrator, (if he acknowledge the debt,) he has actually received so much money, and is answerable for it. This is the result with respect to an executor; and the same reason applies to an administrator, as the same hand is to receive and pay, and

there is no ceremony to be performed in paying the debt, and *no mode of doing it,* but by considering the money to be now in the hands of the party in his character of administrator." The sureties in the administration bond were, accordingly, held liable for the amount, as though it had been actually received. So also, in *Winship* v. *Bass,* (12 Mass. Rep. 199,) it was held that the sureties of an *executor,* who was a debtor to the testator, at the time of his appointment, were responsible for the debt, upon the principle, that it must be considered as having been actually received by the executor.

But it is contended by the defendant, that, even admitting there are assets sufficient for the payment of the *debts* of the testator, the result is still the same ; for a debt due from an executor, to the estate of his testator is assets *for the next of kin,* as well as for creditors ; and they are entitled to, and can obtain the fruits of it in Equity, if not at law. The general rule, I apprehend, to be otherwise. The appointment by a testator of his debtor as executor, is considered in the nature of *a specific bequest* to him of the debt, not to be paid unless there are sufficient assets to pay the debts. But if there are, then to take preference of the general legacies. This is the general doctrine as laid down by Toller, 274, (London ed. of 1800,) in support of which he cites 2 Blackstone's Commentaries, 512, and Hargrave's note on Co. Litt. 264, b, note (1.) It was said by the counsel for the defendants, that these authorities did not support the doctrine for which they were cited ; that although Blackstone does state such to be the rule, yet no such doctrine is to be found in the case to which he refers as his authority ; (the case of *Wankford* v. *Wankford,* 1 Salk. 303.) Now upon an examination of that case, it will be found that Mr. Justice Powell, in his opinion, does state the doctrine, in terms, as laid down by Blackstone and Toller. After remarking, that the extinguishment of the debt in such cases takes place, not by way of release, but as a *legacy or gift* by the will, and where that specific debt, or any part of it, is expressly devised by the will to pay a lega-

NEW YORK,
May, 1824.

Marvin
v.
Stone.

cy, it will be assets to pay such legacy, because the testator did not intend to extinguish the debt; he says, "*But where there is no such special devise, the debt shall be extinguished, notwithstanding any other legacies.*" That is, the appointment of his debtor an executor is *prima facie* evidence of the testator's intention to give him the debt by way of legacy; and where that presumption is not repelled by some provisions of the will, inconsistent with such intention, the extinguishment shall take effect, although there may not be assets to pay the other legacies. The note of Hargrave, also, sustains the doctrine of Toller. "Still, however, (he says) when the creditor makes the debtor his executor, it is to be considered but as a *specific bequest or legacy*, devised to the debtor to pay the debt; and, therefore, like other legacies, it is not to be paid or retained till the other debts are satisfied."

Now, if it is to be considered as *a specific bequest*, then it is entitled to priority of satisfaction over *the general legacies*. For in case of a deficiency of assets, to pay the debt, all the *general* legacies must abate proportionably. But *a specific legacy* is not to abate at all, unless there be not sufficient without it. (2 Bl. Com. 513.)

Whenever, from the whole will, it appears, that it was not the intention of the testator to discharge the debt, by making his debtor his executor, then the executor shall be trustee to the amount of the debt *for the legatees or next of kin*. (Toll, L. Ev. 274; *Carey* v. *Goodinge*, 3 Br. Ch. Cas. 110.; Cas. Temp. Talb. 340.) Now, no such intention appears from the provisions of this will. It is not to be inferred from that part which directs, that all sums of money, bonds or judgments, *that may be in the hands of his executors, shall be divided between his two sons;* because a judgment against one of his executors never could be in the hands of his executors, as a judgment.

But admitting that the judgment is assets for the next of kin; if it is assets, it ceases to be a judgment, and, in contemplation of law, has become money in the hands of the executor. Nothing, therefore, can be due and unpaid upon it; nor can it be assigned.

Judgment for the plaintiffs.