LITTLE
ROCK,
Jan'y 1839

GASTER
vs.
ASHLEY.

STEPHEN GASTER *against* CHESTER ASHLEY.

ERROR *to Pulaski Circuit Court.*

In an action of debt or covenant against the assignor, upon a personal, collateral guarantee, on an assigned note or bond, it is indispensably necessary to allege in the declaration, that the plaintiff has used due diligence in prosecuting his suit against the original obligor, or that he is wholly insolvent and unable to pay.

No particular form, or technical words are necessary to create a covenant, but any words, which show the intention of the parties, will be sufficient. It may be by any words, and on any part of the agreement. The enquiry always is, what was the intention of the parties, and that is to be collected from the context of the instrument itself, which is to be construed according to the obvious meaning, and reasonable sense of the words; and if there be any ambiguity in the words, such a construction is to be given as will militate most strongly against the covenantor.

An endorsement upon a bond for a Lovely claim, assigning, and setting over the bond, and containing the further clause, " and I hereby guarantee that the said claim shall be confirmed at the Land Office at Helena, within a reasonable time, and that the said claim to a donation is a legal and valid claim," is an original covenant, and not a collateral guarantee.

A breach in such case, that the claim was, at the time of making such endorsement, a bad, illegal, and invalid claim, is good.

One good breach in covenant is sufficient.

The facts of this case are fully stated in the opinion of the court.

CUMMINS and PIKE, *for the plaintiff in error:*

The plaintiff in error conceives that the court below erred in sustaining the demurrer. Upon argument of the demurrer, but two grounds were assumed by the defendant, nor does the plaintiff anticipate that other grounds will be taken in this court. The defendant based his demurrer upon the point that the plaintiff should have averred a demand upon the original covenantor for a confirmation of the claim mentioned in the covenant, and a refusal by him to claim a confirmation. And in arguing this point, it was also assumed that the endorsement of the defendant was not a covenant, but merely a guarantee that the original covenantor should do certain acts; from which it was deduced that a demand upon the original covenantor to perform was necessary in order to fix the liability of the defendant.

The plaintiff in error respectfully submits that the endorsement of the defendant, which is the foundation of this action, is a covenant to

LITTLE
ROCK,
Jan'y. 1839
⟶⟶⟶
GASTER
vs.
ASHLEY,
all intents and purposes, and that the word "guarantee," when used
in an obligation under seal, is synonimous with the word "covenant."
A guarantee by parol will sustain an action of assumpsit; but a guar-
antee under seal will sustain no action unless it can be the foundation
of the action of covenant. But the argument of the defendant assum-
ed more than the case warranted. The guarantee of the defendant
was, not only that Mayes should do certain acts—not only that the
claim should be confirmed within a reasonable time—but that the said
claim was, at the time of making such covenant, a legal and valid
claim. This guarantee, that the claim was a legal and valid one,
was precisely such a covenant as the covenants of title in a general
deed, and was broken as soon as made, if the claim was not at that
time a legal and valid one. See 2 *J. J. Marsh.* 430; 2 *Johns. R.* 1;
4 *J. R.* 72; 4 *Cranch*, 429; 2 *Saunders*, 171, c.; 5 *J. R.* 53.

So far, therefore, as the argument of the defendant was founded up-
on the distinction between a guarantee and a covenant, it was based
upon imagination; for it is well settled that no particular words are ne-
cessary to make a covenant. 1 *Bibb*, 379; 2 *Bibb*, 614; 1 *Marsh.*
476; 3 *Johns. Rep.* 44; *Lit. Sel. Cas.* 134.

It only remains to consider the necessity of averring a demand of
confirmation upon the original covenantor. The breach in each count
of the declaration is, not only that the said claim "has not been con-
firmed at said land office, although a reasonable time has elapsed;"
but also "that said claim was, at the time of making said covenant, a
bad, illegal, and invalid claim." If the claim was an illegal and in-
valid claim, the covenant was broken as soon as made. See *ut sup.*

In a declaration in covenant it is enough to assign one good breach.
See 3 *Yerger* 463; 4 *Littell*, 432; 5 *Mon.* 11, 34. Where there are
some good and some bad breaches, a general demurrer cannot be sus-
tained; and if there is enough assigned to show a subsisting cause of
action, the demurrer will be overruled. 4 *Litt.* 432 *ut sup.*

There being, then, one good breach, to wit, that the claim was an
illegal and invalid one at the time of making the covenant, the decla-
tion was good and sufficient. See 1 *Chitty's Pl.* 325, 6, 9; 3 *Bibb*,
332. And therefore, even allowing the necessity of averring a de-
mand, had the covenant been only that the claim should be confirmed;
yet as it was coupled with a further warranty, that the claim was then
a legal and valid one, a breach of the latter was sufficient to fix the
liability. 6 *J. R.* 65; 13 *J. R.* 264.

Another principle in pleading, which applies to this case, is, that where there is a condition precedent, performance of the condition, or an excuse for non-performance, must be averred. If the claim was illegal and invalid, that fact was sufficient excuse for not making a demand; for to what end demand a confirmation, when such confirmation was impossible?

But a breach of the latter covenant included in itself a breach of the former, for if the claim was not a valid one, it never could be confirmed. It was, therefore, not in fact necessary to aver that the claim had not been confirmed. An averment that the claim was not a legal and valid one, was a complete breach. Yet the plaintiff risked nothing by negativing every part of the covenant. The breach may be as large as the contract, because the plaintiff may recover, though he only prove a part of the breach as laid. 1 *Chitty's Pl.* 329.

Nor is the plaintiff in error left to rely upon these arguments alone. The premises and positions of the defendant are incorrect, and not sustained by law. The very point here in dispute has been often adjudicated and definitely settled in the courts of Kentucky, and those decisions fully sustain the position that in this case there was no need of averring a demand even in the breach of the former part of the covenant. Where a thing to be done is *local*, he must do it in a reasonable time. 3 *Bibb,* 105. And if he fail in the performance, although there may have been no special request, he will be liable for a breach of his contract. *Same ut sup.* This case is like those where the thing to be done is transitory in its nature, because the defendant guaranteed that the claim should be confirmed "in a reasonable time." And even in local acts, if the concurrence of the obligor and obligee is not necessary, the duty accrues presently. 1 *Bibb* 461; 3 *Bibb* 329; 3 *Monr.* 446—which declare that where that which is stipulated to be done is transitory in its nature, and no time is specified for the performance, the covenantor is bound, without being hastened by request, to an immediate performance; and also where concurrence of the covenantee is not necessary, as in this case. On a covenant to convey lands, to be valued by a third person, it is neither necessary to aver a demand of conveyance, nor a request of valuation. 4 *Bibb,* 300; 2 *Yerger,* 127.

These cases, decided by the courts of Kentucky and Tennessee, bear directly upon the present case. Nor does the reason of the law conflict with the law itself. To what purpose aver a demand of con-

LITTLE firmation of title, when it is already averred that the covenantor nevet
ROCK,
Jan'y 1839 had, and never will have it in his power to obtain such confirmation,
GASTER because the claim was, at the time of making the covenant, illegal
*vs.*
ASHLEY, and invalid.   The words of the court, in a parallel case, *Williams* vs.
*Casey*, 4 *Bibb*, 300, apply with peculiar force: "As a breach is
alleged, not in the *failure* of the defendant only, but in his total ina-
bility to convey, it would be preposterous to require of the plaintiff,
before he could maintain his action, to make a special demand of the
title."

Upon the point that the breach, that "the claim was bad, illegal
and invalid," is sufficient, see *Holder* vs. *Taylor*, *Hobart* 12 *a*, where
it was holden, that where a lease for years was made by the *demisi*,
that word imported a covenant, and that the averment, that, at the
time of making the lease, the lessor *was not seized of the land*, but a
stranger was, and so the covenant in law was broken, was a sufficient
breach:   That it was not necessary to aver an expulsion, because
the breach of the covenant was in that the lessor had taken upon
him to demise that which he could not.

So in *Lancashire* v. *Glover*, 2 *Shower*, 460, in debt on bond for non-
performance of a covenant, "that the defendant had a good and
rightful authority to convey;" a breach assigned in the direct nega-
tive that he had not a good and rightful authority, &c. is good.   So
in *Robert Bradshaw's* case, 9 *Co.* 60, and same case in *Cro. Jac.* 304,
named there *Salmon* v. *Bradshaw*: So in *Plomer* v. *Plaisted*, 2
*Shower*, 472; *Hancock* v. *Field*, *Cro. Jac.* 170; *Johnson* v. *Proctor*,
*Yelverton*, 175; 1 *Saund.* 322, *a n.* (2); *Grannis* v. *Clark*, 8 *Cowen* 35.

See further as to what words are necessary to make a covenant—
*Brett* v. *Cumberland*, *Cro. Jac.* 399, 521.

ASHLEY and WATKINS, *contra:*

The question arising in this case is, whether an assignment of a
covenant can be sued, without an averment in the declaration, of
due diligence on the part of the plaintiff, in prosecuting the cove-
nant, or to insolvency; or that he has at least made demand upon him
to perform his covenant.

The law upon this point is the same, in the States of Virginia, Ken-
tucky, and Missouri, as well as of Arkansas, under statutes of assign-
ment nearly or precisely similar, and the authorities are numerous:—
1 *Call's Virginia Rep.* 497, *Brinker* v. *Perry*, 5th *Littell*, 194; *Camp-*

*Bell* v. *Hopson*, 1st *Marshall*, 229; *Lemmons* v. *Choteau*, *Sup. Court Ark.*
See *Rec.*

The Statute makes no difference between bonds and covenants for
the payment of money or property, which are made assignable and the course of decisions has been uniform. *Digest. Title Assignments.*

As to liability of assignor on bonds, notes, and covenants, see also, 3 *J. J. Marsh.* 636; 4 *ib.* 304; 7 *ib.* 343; *Murdock* v. *Rawlings*, 3d *Monroe* 75; *Bedal* v.*Smith*, Same vol. p. 290.

LACY, *Judge*, delivered the opinion of the court:

This is an action of covenant, founded on an endorsement, under the seal of *Chester Ashley* to *Stephen Gaster*, upon a deed of bargain and sale for the conveyance of a donation claim to three hundred and twenty acres of land, executed by Robert Mays to the defendant in error.

The declaration contains three counts, each averring the same cause of action; but charging the defendant in different ways. The deed from Mays to *Ashley* is for the consideration of four hundred dollars, and recites the usual covenants in such conveyances. That the grantor has a good and valid claim, agreeable to the act of Congress —that the claim is properly proved up before the Land Officers, and that if any other proof is necessary to establish its validity, he will furnish the same—that the grantee shall have full power and authority to enter the said claim on any of the public lands, as his agent and his attorney in fact, and upon demand or without it, as soon as the President of the United States shall issue patents on the said entry—that he will execute a deed with general warrantee in fee simple, to the grantee and his heirs for the land previously located, and upon which the grant has emanated. On the back of this deed is the following endorsement: "Know all men by these presents, that I, Chester Ashley, for and in consideration of eight hundred dollars, to me in hand paid by *Stephen Gaster*, the receipt whereof is hereby acknowledged, have assigned, transferred, and set over to the said *Gaster* the within bond, and hereby guarantee that the said claim shall be confirmed at the land office at Helena, within a reasonable time; and that the said claim to a donation is a legal and valid claim. Witness my hand and seal, this 6th day of July, 1835.

CHESTER ASHLEY. (L. S.)

The defendant is only sought to be charged by the latter clause in

LITTLE
ROCK,
Jan'y 1839

GASTER
vs.
ASHLEY.

the covenant, and the breaches assigned are, that he did not cause to be confirmed at the land office at Helena, the said claim of the said Robert Mays within a reasonable time; and that the said claim to a donation was not a legal and valid claim at the time of making the agreement, but a wholly illegal and invalid claim.   At the return term of the writ, the defendant appeared, and craved oyer of the writings declared on, which was granted.  He then filed a general demurrer to the declaration, to which there was a joinder; and judgment was thereupon rendered in favor of the demurrer, and against the sufficiency of the declaration.

The cause now stands on a writ of error sued out and prosecuted by the plaintiff to reverse the judgment of the court below.  The record and the assignment of errors present but a single question, which is, does the declaration contain a good cause of action, and are the breaches properly assigned?  It is contended on behalf of the defendant, that the present action cannot be maintained, nor are the breaches well laid.   The instrument sued on is said to be a mere assignment of a *chose in action,* coupled with a personal guarantee for the ultimate performance of the original obligor's bond.   On the other hand, it is insisted for the plaintiff in error, that the defendant's writing obligatory is a covenant to all intents and purposes, and that it is an original, and not a collateral liability.   If the first proposition be true, the declaration is fatally defective, and was rightfully adjudged bad on demurrer; for no position is more clearly and incontestibly established by all the authorities, or more consonant to reason and justice, than that in action of debt or covenant, against the assignor upon a personal, collateral guarantee on an assigned note or bond, it is indispensably necessary that the plaintiff should allege in his declaration he has used due diligence in prosecuting his suit against the original obligor, or that he is wholly insolvent and unable to pay.   Without some such averment, no cause of action accrues; for the breach entirely depends on the happening of the precedent conditions, and therefore in every instance of the kind such an allegation is one essential prerequisite to the maintainance of the action.   The cases cited at the bar in favor of the defendant unquestionably prove the principle here stated, and have exclusive reference to it.   3 *J. J. Marshall,* 360; 4 *J. J. Marshall,* 304; 3 *Monroe,* 75; *Call,* 497.

Before these principles can be considered as applicable to the case

now before the court, the defendant must show from the deed itself, or the legal inference fairly deducible from the contract, that he only intended to bind himself by his assignment and guarantee, for the performance by the obligor of the condition of his bond. The court, in examining the question, do not deem it very material to determine whether the deed of bargain and sale from Mays to *Chester Ashley*, is assignable under our Statute, or not; for, be that as it may, the defendant would still be held liable, if the latter clause in the assignment contained within itself a distinct and independant covenant, separate and apart from the agreement on the bond; and he can in no way he made responsible in this action, if he is only bound as collateral security.

So far, however, as the covenant of Mays, and the entire assignment of it can throw light on the real intention and design of the parties, it should be looked to, and regarded as furnishing no ordinary evidence, by which the contract may be rightfully interpreted. The enquiry then is, what is the character or nature of the agreement declared on. Is it a covenant, or a collateral guarantee? A covenant is an agreement, or consent of two or more persons by deed, in writing, sealed and delivered, whereby either the one or the other of the parties doth promise that something is done already, or shall be done afterwards. And this is either express or in deed, *i. e.* when the covenant is express in the deed, or it is implied, or in law, *i. e.* when the deed doth not express; but the law doth make and supply it. See *Shepherd's Touch Stone, C. VII.* No particular form or technical words are necessary to create a covenant; but any words which show the intention of the parties, will be sufficient for the purpose. *Hollis* vs. *Carr*, 2 *Mod.* 88. For a covenant may be by any words, and upon any part of the agreement, in writing. 1 *Leon*, 324. The word covenant is not necessary to make a covenant. 1 *Rolle Abr.* 518; 1 *Burr* 299; *Hallet* vs. *Willis*, 3 *J. R.* 44. In *Bull* vs. *Follett*, 5 *Cow.* 170, it is said that no precise or formal terms are necessary to constitute a covenant. The enquiry always is, what was the intention of the parties. In construing a covenant, it must be considered in reference to the context, and be performed according to the spirit and intention of the parties. *Marvin* vs. *Stone*, 2 *Cow.* 781; *Quackenboss* vs. *Lansing* 6 *J. R.* 49. In the case of *Iggulden* vs. *May*, (7 *East*, 242; *Plowdon*, 329,) it declared that the intention of the parties is to be collected from the context of the instrument itself, which is to be construed

LITTLE
ROCK,
Jan'y 1839.

GASTER
*vs.*
ASHLEY.

LITTLE
ROCK,
Jan'y 1839.
GASTER
vs.
ASHLEY.

according to the obvious meaning and reasonable sense of the words; and if there be any ambiguity in the terms, such a construction shall be given as will militate most strongly against the covenantor. By applying these rules to the case under discussion, we shall find little or no difficulty in discovering the real intention of the parties, the true nature and object of the contract sued on. It is said that the fact of the signing of the bond demonstates what was the intention of the parties; for why assign it, if the defendant intended to make himself responsible in the first instance. There are two obvious answers to this question: In the first place it is exceedingly questionable whether such a deed of bargain and sale can pass, by assignment at law. The equity may be assigned—the legal estate probably cannot be assigned. Secondly, admitting that it can, which is by means conceded, still the peculiar character of the claim conveyed, would induce the assignee to wish to have the title papers in his possession, that he might be able to make the locations in the claimant's own name, as the law required; and as these muniments of title would be wholly useless to the assignor, and he of course would be willing to transfer them, or part with them, by assignment. Again: if the original obligor is answerable to the assignee, to what amount is he bound? Certainly for nothing more than the consideration money and interest, expressed in his deed, which is four hundred dollars; whereas, the assignee has paid to the assignor just double that sum, as their agreement on its face shows, so that the responsibility of the original obligor would be no adequate indemnity for the loss that the present plaintiff sustained, by reason of the defendant's assignment. He cannot have at one and the same time a divided responsibility, for one and the same cause of action. The very idea involves a legal contradiction, and it proves if true, that he has a perfect legal right, without any adequate or legal remedy. This view of the case goes far to prove that the plaintiff never looked to the obligor's original bond, in the event he should be damnified; but that he regards the defendant as alone answerable to him on his assignment of warranty. If any thing should be wanting to strengthen this conclusion, the intention of the parties may be fairly collected and inferred from considering to whom was the purchase money paid, and to whom was full faith and credit given. Certainly not to the original covenantor, but to the defendant in this action. He received the consideration money, and on his deed the plaintiff implicitly relied. For any thing that appears, the original claimant

LITTLE
ROCK,
Jan'y 1838

GASTER
vs.
ASHLEY

was an entire stranger to the contract. The plaintiff might be very willing to trust to the responsibility and guarantee of the defendant, but wholly unwilling to place any confidence or reliance upon the ultimate security of the claimant. Besides, the agreement between the parties has all the essential requisites of a covenant. It is in writing, signed, sealed and delivered by the assignor, with a promise to do a particular act. If there should still be any doubt or uncertainty as to the intention or meaning of the contract, the latter clause of the instrument will place the matter beyond all controversy or dispute. The defendant, after reciting the assignment on the bond, further adds:— "I hereby guarantee that the said claim to a donation, is a legal and valid claim." What is the meaning of the word guarantee, as used in this agreement? Does it purport to be a collateral or an original undertaking? In what sense did the parties use it? All words or terms used are more or less arbitary. and the same word or term frequently has several wholly different and distinct meanings. This is one of the imperfections that essentially belong to the nature of all written or spoken language, and the evil, if it can be called one, is remedied by the governing words in the sentence, that precede and follow the doubtful term, by the embodied form and proportions of the ideas sought to be conveyed; and, above all, from the sense and intention of the parties, that define and limit these meanings, which is principally to be gathered from the context of the whole instrument and every part of it, and from the subject matter about which it treats. That the word "guarantee" is very generally employed to signify a remote liability, is admitted; but it does not thence follow, that it is not frequently used to mean a direct or positive engagement. Its ordinary acceptation is to secure, promise, to bind, agree, to warrant, and to defend. It is often inserted in deeds of conveyance, and when it is used, unless its sense is limited or extended by the context of the writing, or the legal consequence of the act, it is synonymous with promise, agree, with warrant, or defend. And in this sense it is used in the deed or assignment executed by the defendant. If it was even doubtful, how it was intended to be employed, still the court is bound to give it such meaning as is most natural and obvious, and which would best carry out the true intention of the parties, and promote the objects of the agreement. The deed should be so construed as to be made to stand if practicable; for it is under the authority and solemnity of a seal; and hence the legal presumption, that if words be used in a cove-

LITTLE
ROCK,
Jan'y 1839

GASTER
vs.
ASHLEY.
nant or deed, which will admit of two interpretations, or are in any
manner doubtful, they shall be taken to operate most strongly against
him who made the grant.    To guarantee a title is to warrant that
title.    To guarantee a right is to defend that right; to guarantee the
validity of a claim is to covenant that the party making the deed is
seised of an indefeasible estate, of inheritance in fee; for what is a
valid and lawful title, but covenant of seisin, and in declaring on such
an instrument, the plaintiff need not aver that he was legally evicted:
for the deed is a personal covenant—the breach of it happens, if at
all, at the very moment of its execution.    The authorities upon this
point, and the reason upon which they proceed, were fully collected
and analyzed in the case of *Logan* vs. *Moulder*, decided during the
present term of this court.  · It is, therefore, deemed unnecessary and
inappropriate to go again into the investigation of that subject.    See
*Greenby* vs. *Wilcocks*, 2 *J. R.* 1; *Abbot* vs. *Allen*, 14 *J. R.* 248.

It was unnecessary for the plaintiff to have averred in his declara-
tion, that the claim was not confirmed within a reasonable time.—
This allegation is surplusage.    The cause of action did not depend
on any subsequent failure of title, but on the assignor's total inability
to convey any right or title.

And as there is clearly one good breach assigned, to wit, that the
claim at the time of make the endorsement, was a bad, illegal, and
invalid claim, the action is well founded, and the breaches properly
laid.    See 4 *Bibb*, 300; 3 *Bibb*, 332; 1 *Chitty*, 325, 6, 9.    In every
point of view in which we are capable of considering this subject,
we are clearly of opinion, that the agreement of the defendant is a
covenant to all intents and purposes for which it was executed.—
That it contains all the essential ingredients of a deed of such an·
assignment, that it was so understood by the parties themselves, and
that intention is manifest and demonstrable from the nature and char-·
acter of the whole transaction.    The agreement itself contains· apt
and appropriate terms to constitute a covenant.    It consists of two·
parts: the first is a new assignment of the original obligor's bond,·
which is one thing; the second is a personal guarantee or covenant of·
title, which is wholly a distinct and different matter.

In all probability the vendee would never have purchased, or the·
vendor parted with the title, had it not been for the assignor's express·
and declared warranty.    To the faith of that he alone trusted, and·
upon it paid the purchase money; and it would be, therefore, both un-·

reasonable and unjust to compel him to resort to any other or wholly different liability. This being the case, the judgment of the Circuit Court was evidently erroneous in sustaining the demurrer. It must, therefore, be reversed with costs, and the cause remanded, to be proceeded in agreeably to the opinion here pronounced, and leave granted to the defendant, if he ask it, to withdraw his demurrer, and plead over to the action.