Thurman, J.
The jury having found for the defendant upon the ¡second count of the declaration, and the third count having been abandoned, the first count alone remains to be considered. ¥e are first to inquire whether the action is maintainable for the causes sot forth in that count. It is not denied that Card, if alive, would be liable to the action; for section 25 of the “ act defining the duties of executors and administrators,” passed Mareh 12, 1831 (29 Ohio L. 235; 3 Chase, 1780), expressly provided, “that when an executor shall resign or be removed, and an administrator with the will annexed appointed, such new appointed administrator shall be .authorized immediately to commence an action on the case against such prior executor, and hold him to bail; and in such action to •recover the amount of moneys, assets, rents, issues, and profits received by such removed ^executor, and not applied according to law, as well as all damages done or committed by such executor in respect to the estate in his or her hands.” Not is if very seri•ously denied, that had the action been brought against Card, it would have survived against his administrator, by force of section 64 of the practice act of 1831 (29 Ohio L. 70; 3 Chase, 1682). But the point made is, that the' action could not be commenced against Card’s representatives; that the right died with him, according to the maxim, “Actio personalis moritur cum persona"
In reply, we are referred to the above-quoted section of the administration law, and to section 74 of the practice act (Swan’s Stat., old ed. 660; Chase, 1683), which is in these words: “ That if any person, having a right to commence and maintain an .action of trespass, or trespass on the case, for mesne profits; or, for an injury done or suffered to his estate, real or personal; or, for any deceit or fraud committed in the sale or exchange thereof; or, if any person liable to either of such actions, shall die before such .action shall be brought, the cause of such action shall nevertheless survive. And any such action may be brought by the executor or .administrator of the deceased party, having such right of action, or it may be brought against the executor or administrator of the deceased party liable to such action; and it may be proceeded in to .final judgment and execution, as in other cases, for or against executors and administrators.”- Much learning and ability are displayed in the arguments of counsel, on both sides, upon the construction of these statutes, and were they yet in force, it would be ■proper to give very fully the grounds of our conclusion. But they *383 have been repealed, and the question now under consideration may never again arise. I shall, therefore, do little more than state our judgment, without answering the various objections that may be urged against it. That those statutes, being remedial in their nature, ought to be liberally construed, can hardly be denied. Indeed, it would be difficult to find a case in which a court would be bettor warranted in going beyond the strict letter *of the law, and finding the legislative intent in its general purpose and spirit. The glaring injustice resulting from the maxim, “Actio personalis moriiur cum persona,” led the English courts, centuries ago, to lay hold of every plausible pretext to limit and modify it. Thus, the statute, 4 Edw.-3, c. 7, was extended by construction far more liberally than our statutes require to be extended to bring the present case within them. That statute, after reciting that in times past executors have hot had actions for a trespass done to their testators, as of the goods and chattels of the said testators, carried away in their life, and so as such trespasses have remained unpunished, enacted, “that the executors in such cases shall have an action against the trespassers, and recover their damages in like manner as they whose executors they be, should have had if they were living.” This, says Serjeant Williams, in his notes to Saunders’ Eeports (1 Saund. 216a), “being a remedial law, has always been expounded largely, and though it makes use of the word trespasses only, has been extended to other cases within the meaning and intent of the statute. 1 Ventr. 187, Emerson v. Emerson; Sir W. Jones, 174; 2 Ld. Raymond, 974, Berwick v. Andrews. Therefore, by an equitable construction of the statute, an executor or administrator shall now have the same actions for any injury done to the personal estate of the testator in his lifetime, whereby it is become less beneficial to the executor, as the testator himself might have had, whatever the form of the action may he. Latch, 168. So that he may now have trespass or trover. 5 Rep. 27a, Russell’s case; Sir W. Jones, 174, action for a false return; 4 Mod. 403, Williams v. Carey, for an escape; 2 Ld. Raymond, 973, Berwick v. Andrews, debt on a judgment against an executor suggesting a devastavit; 1 Salk. 314, action for removing goods taken in execu tion before the testator (the landlord) was.paid a year’s rent; 1 Str. 212, Palgrave v. Windham, and other actions of the like kind, for injuries done to the personal estate of the testator in his lifetime.”
I might give numerous other illustrations of the efforts of *384 *the English courts to bring the rule, “actio personalisr moritur,” etc., within reasonable limits, but the above may suffice. It shows not only their desire to do so, but also their readiness to-accomplish that object by giving the most enlarged construction possible to their statutes.
In doing this, they have not departed from the true province of a court; for while, on the one hand, the judiciary should be careful not to make its office of expounding statutes a cloak for the exercise of legislative power, on the other hand it is equally bound not to-stick in the mere letter of the law, but rather to seek for its reason and spirit in the mischief that required a remedy, and the general scope of the legislation designed to effect it. Hence the ancient maxim, that has been styled “a fundamental rule of construction,” that “remedial statutes shall be construed liberally.” 1 Chitty’sBlack. 61, note 30. “There are three points,” says Blackstone, “to-be considered in the construction of all remedial statutes—the old law, the mischief and the remedy; that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe' the act as to suppress the miscjiief and advance the remedy.” Ibid 60. “The equity of a statute,” says Coke, “is a construction made by the judges, that cases out of the letter of a statute, yet being within the same mischief, or cause of the making of the same, shall be within the same remedy that the statute provideth.” Inst. 24 b. “ The words of a remedial statute are to be construed largely and beneficially, so as to suppress the mischief and advance the remedy. It is by no means unusual, in construing-remedial statutes, to extend the enacting words beyond their natural import and effect, in order to include eases within the same mischiefs.” Dwarr. on Stat. 734, 735. “ It frequently becomes the duty of courts, in order to give effect to the manifest intentions of a. statute, to restrain, or qualify, or enlarge the ordinary meaning of the words used. It is said that the power of construing *a statute, is in the judges, who have authority over all laws, and more especially over statutes, to mold them according to reason and conscience, to the best and truest use.” Burgett v. Burgett, 1 Ohio, 469.
Now, what was the mischief that led to the enactment of section 25 of our statute hereinbefore quoted ? The answer is obvious. At. *385 common law, an administrator, or executor, who had • resigned, or been removed, was liable to no action at the suit of the administrator de bonis non, except for the recovery of such assets as remained in specie unadministered. The several creditors, legatees and distributees, to whom he was liable, wore driven to their suits, if their claims remained unpaid. There might be as many suits as there were individuals of those various classes; the expenses of litigation were oftentimes greater than the amount to be recovered ; and the difficulties in doing justice between the parties, and properly settling the estate, were manifold and grievous. Besides, the state of the law was uncertain. There was room to argue that the common law upon this subject, and which gave rise to these difficulties, was inconsistent with our legislation, and, therefore, not in force in this state. On the other hand, it had not been expressly set aside. Under these circumstances, the provisions of section 25 were first enacted many years ago, and in 1831 they were re-enacted. The object was to transfer the entire estate to the administrator de bonis non. He was therefore authorized to maintain a suit for its recovery against the late executor or administrator. I say “ or administrator,” because the act should, without doubt, be thus construed. A cause of action was created against such executor, or administrator, which would siirvive against his representatives if he were sued, and which the policy of the law required to survive whether he was sued or not. Thcrecould be no reason for providing that if he should die before suit brought, the cause of action should, cease. There was just the same necessity for allowing an action against his representatives, that there was for permitting one against ^himself, and it would have been plainly absurd to let the accident of his-death, before suit brought, defeat the whole policy of the law. ¥e are, therefore, clearly of opinion, that the case before us is within the equity of the section, and we think that no principle of construction, of law, is violated by holding that the cause of action that existed against Card, survived his death. And here it is proper to remark, that this view of the statute in nowise conflicts with the case of Blizzard v. Filler, 20 Ohio, 490. There the administrator died in office, and there was no provision in the statute for a suit, by the administrator de bonis non, against his representatives. The question was not whether a cause of action had survived, but whether one had ever existed. The court said there had not, for in their opinion the case of death in office was “ designedly left out of the *386 section.” It was confined to cases of resignation or removal from office. The statute under consideration was the act of 1840, not that of 1831. But in the case before us, a cause of action plainly existed against Card in his lifetime. No one denies this, for .the statute expressly gave it. The question, therefore, is, did it survive ? A wholly different question from that involved in Blizzard v. Filler.
But the case does not rest upon section 25 alone, though we think that sufficient; for our views are materially strengthened by section 74 of the practice act; and these two sections, considered together, leave no doubt upon our minds. There are also other grounds entitled to much consideration, and strongly supported by common-law authorities, for holding that the cause of action survived. They are clearly presented in the arguments of counsel, and it is unnecessary to restate them.*
It is also contended by the defendant, that the order of the probate court of Geauga county, overruling the exceptions to Card’s administration account, and directing the account to be recorded, is an estoppel that bars the present suit. We do not think so. Those exceptions were filed by the widow *and heirs of Tracy. This action is brought by the administrator de bonis non. The parties are different. The widow and heirs could except in their own right alone; but the administrator represents, not the widow .and heirs only, but the creditors of the estate, and all the legatees •and distributees. It is said, however, that it is for the benefit of the widows and heirs merely, that this suit is prosecuted; and the court was asked to charge the jury, that if such was the fact, the Geauga record was an estoppel. But it does not appear that any evidence was given, tending to prove this supposition, to say nothing of the ■question, whether such testimony was admissible. In the absence -of testimony of that tendency, there was no right to ask for the instruction. Courts do not sit to decide abstract questions of law, wholly foreign to the case. If there was any such evidence, the istatement signed by the judges should show. it. We can not look elsewhere for it. When a motion for a new trial is reserved for decision by this court, a statement of the testimony, as full as is necessary ■in a bill of exceptions, and verified by the judges trying the case, must be prepared, or the parties must make an agreed case; otherwise, we have nothing authentic before us. In this case the judges *387 ■did give a statement, but it nowhere shows that any testimony was offered, tending to prove that the suit was for the benefit of Tracy’s widow and heirs alone. .
Again: it was only as “apartial settlement” that Card’s account was ordered to be “accepted and recorded.” It was not filed as a final account. It was not so regarded by the court, and it is fairly inferable, from the record, that the exceptions, or at least some of the most important of them, were overruled—not because they were .groundless, but because, in the judgment of the court, they would be more properly exhibited against the final, than against a mere partial account. And this may have been true as to some of them, for aught we can toll, the evidence that was before the probate court not being before us. We can not say, from the record, that the probate court passed upon the merits of *the exceptions; and •unless that was done, there is little ground for claiming an estoppel. • We are not disposed to apply to proceedings before judges of probate, the presumptions that arise upon the pleadings in a common-law court, and say that because the exceptions are filed to an administration account, and overruled, the party excepting is forever estopped, whatever may have been the reason for the decision. It would be highly dangerous to adopt any such rule. Whether the decision of a probate judge, upon exceptions to an account, ever •operates as an estoppel, we do not decide. It is sufficient that no •case of estoppel is here shown.
The court was asked to charge the jury, “ That the appointment of Card, as executor, by Tracy, was, as against heirs and legatees, & release and discharge of the indebtedness (of Card) ; and if the jury find the estate of Tracy solvent, aside from these notes (made by card), the plaintiffs can not, for these items, recover.”
The court refused; it is contended erroneously; but we think very properly. It is true, that, at common law, if a creditor appoint his debtor his executor, and the latter accept the trust, the debt is, in general, discharged; or, at least, all legal remedies for its recovery. For this rule different reasons have been given. Some judges have thought that the appointment of the executor is to be“ considered in the nature of a specific bequest to him of the debt, not to be paid, unless there are not sufficient assets to pay the debts. But if there are, then to take preference of the general legacies.” Marvin v. Stone, 2 Cow. 809; Powell, J., in Wankford v. Wankford, 1 Salk. 303. But reason, and the weight of authority, are against *388 this view. Perhaps not one testator out of a hundred imagines that the mere appointment of his debtor to be his executor, will discharge the debt. It is not in the natural course of things to give legacies in a manner so indirect; and unless we are ready to aid in defeating the intent of testators, instead of being governed by it, as we ought, we can not accede to this doctrine of “ specific bequest.”
The reason more commonly given for the *rule, and whicli is supported by a preponderance of authority, is thus stated in Williams on Executors, 1123, 1124: “ The principle is, that a debt is merely a right to recover the amount by way of action ; and, as-an executor can not maintain an action against himself, his appointment, by the creditor to that office, suspends the action for the-debt; and where a personal action is once suspended by the voluntary act of the party entitled to it, it is forever gone and discharged.” The author adds, 1128,1129 : “ It remains to investigate-the effect, in equity, of the appointment of a debtor to the office of executor. It is considered, as there has already been occasion tosíate, that the debt due from the debtor executor has been paid to-him by himself; and upon this supposition, it is an established rule-in equity, that the executor shall be accountable- for the amount of his debt as assets. 9 B. & G. 134. And it should seem now to be-clearly settled that the debt is general assets, not only for the payment of the testator’s debts,, but also of his legacies. There are,, indeed, some authorities for considering the appointment in the-light of a specific legacy to the debtor, for the purpose of discharging the bebt; and that, therefore, although like all other legacies, it shall not be paid or retained till the debts are satisfied; yet the-executor has a right to it, exclusive of the other legatees. And; Lord Talbot, in Brown v. Selwyn, Cas. temp. Talb. 242, speaks of the question as being at that, time unsettled, whether such a debt was assets to pay legacies in general, though he inclines to be of opinion in the affirmative. However, Lord Thurlow, in Carey v. Goodinge, 3 Bro. C. C. 111, and Sir William Grant, in Berry v. Usher, 11 Ves. 90, treat the point as perfectly settled, that the appointment of a debtor to be executor is no,more than a parting-with the action, and that it shall not operate as a release, as against legatees. So in Simmons v. Guttridge, 13 Ves. 262, Lord Erskineheld that the examination of an executor, under the usual decree, upon a bill by legatees for an account, ought to contain an interrogatory, whether he is indebted to the testator; the *debt from *389 Mm being assets. See also Tomlin v. Tomlin, 1 Hare, 247, per Wigram, V. C. A trust is accordingly raised in equity, not only for a residuary legatee (Brown v. Selwyn, supra; S. C., 3 Bro. P. C. 607, Toml. ed.), but even for a next of kin.” Carey v. Goodinge, supra
To the same effect is Stevens v. Gaylord, 11 Mass. 265, in which it was held, upon authority, that the appointment “ is not always a •legacy, nor a release or extinguishment of the debt. It is not a legacy, if it appear from the will, that the testator did not intend to give the amount of the debt to the executor; as if he give him a distinct legacy in the same will. It is not always a release or extinguishment of the debt; for it is assets to pay creditors, if wanted for that purpose. It is also assets to pay legacies, or distributable among the next of kin, when the debt is not itself given ¡as a legacy to the executor.”
In Bigelow v. Bigelow, 4 Ohio, 138, the court said: “ It is now a well-settled principle, that if a creditor make his debtor executor; it is not absolutely an extinguishment of the debt, but remains as as■sets in his hands; Dorchester v. Webb, Croke Car. 372. It is, how-ever, quasi a release at law, because he can not be sued; 1 Com. Dig. 337. The same rule must apply to administrators, who can not sue themselves, any more than executors.”
These authorities very fully sustain the refusal of the court to .give the instructions asked. There is not a word in Tracy’s will, indicative of a design to release his claims on Card. On the contrary, he gave him a distinct legacy, which, as we have seen, is held ¡sufficient to rebut a presumption of such an intent. This would be •enough; but there are, to our minds, more satisfactory reasons. We agree with the Supreme Court of Massachusetts, 11 Mass. 266, ¡-that the debt of the executor is assets, not only to pay creditors, but also to pay legacies, or for distribution among the distributees •of the estate, in all cases where “ the debt is not itself given as a legacy to the executor.” This was held upon authority independ•ent of Massachusetts legislation. And the same doctrine has always, we believe, prevailed in *Ohio; and ever since 1840, has been expressly declared by statute. Indeed, the same thing was, in effect, provided by our former administration laws, and statutes of descent and distribution. For they have always declared how all property and effects,- not devised or bequeathed, shall descend or be distributed ; and no exception in favor of an executor has ever been made. But as the mere appointment of the executor *390 does not make him a legatee of kis debt, or in equity extinguish it, it follows, that it is to be administered according to some provision-of the will that embraces it; or if there is no such provision, that, as to it, the decedent died intestate, and its distribution is provided for by the statute. . Besides, our administration laws have, in almost all particulars, placed executors and administrators on the same footing; so that the court, in Bigelow v. Bigelow, supra, when considering whether the debt was extinguished, were warranted in saying, that the same rule must apply to both. But it is clear, that an appointment as administrator does not extinguish the debt. And see Winship v. Bass, 12 Mass. 198.
The court were also asked to charge the jury, “ That these notes (the Card notes) were not assets in the hands of Card, as against his bail, if he was insolvent; and if the jury find such to have been the fact, and that this suit is prosecuted for the purpose of laying the foundation for proceedings against the bail, the amount of the notes can not be recovered.”
The court refused, and, on the contrary, charged, “ that the notes as they fell due, became assets in Card’s hands, as executor, and that he was accountable for them as such.”
It is difficult to perceive how the jury could inquire, whether the suit was prosecuted for the purpose of laying the foundation for proceedings against Card’s bail. We are at a loss to discover how any such question was, or could be involved in the issue. The-plaintiffs had a good cause of action against Card’s administrator, or they had not. If they had, they were entitled to a judgment, whether his estate was solvent or insolvent; whether his bail would or *would not be affected. The bail was not, and could not be a party to the suit, and no rights of his could intervene to prevent a judgment against the defendant, if the latter was liable to-the action. The court and jury had nothing to do with any parties but those before them.
But, in any view of the case, was the charge erroneous? A majority of the court are clearly of opinion it was not. In Winship v. Bass, before cited, it was held, that the debt of an executor was not released by his appointment and acceptance of the trust, but that, on the contrary, it was assets in his hands, and covered by the administration bond. The court said: “ For, as the executor has given bond for the faithful execution of his trust, and as he must be supposed actually to have received, for the purposes of his trust, a debt *391 due from himself so that he and his sureties will be responsible on their bond for such debt, the interest of the estate may require that such security should be preserved by continuing the executor in. office.” This case was cited, with approval, in Bigelow v. Bigelow, 4 Ohio, 138; while in Hall v. Pratt, 5 Ohio, 72, the court ruled, “ that the granting administration of an estate to one indebted to the intestate, is an extinguishment of the debt. The chose in action becomes converted into a chose in possession, and is transmuted, by the mere operation of law, which is equivalent to judgment and execution. The debt is thus satisfied and extinguished. The instant administration is granted, the administrator, being the person to pay and to receive, is considered as having paid the debt, and as holding the amount in his hands, as assets; and the debt having once become assets, no act of the parties can return them back to an obligation.” In support of these views, numerous. authorities are cited, which it is unnecessary again to refer to. For 'later authority, to the same effect, see Williams on Executors, 1128. In speaking of the debt being extinguished and converted into assets, “ the instant administration is granted,” the court, of course, spoke of debts then due, and not of debts maturing after the grant, *and which could not be considered as paid before their maturity.
The case of Collard’s administrator v. Donaldson, 17 Ohio, 264, to which we are referred by defendant’s counsel, does not, in any manner, conflict with Bigelow v. Bigelow, and Hall v. Pratt. On the contrary, it recognizes them as correct decisions, and merely holds that a mortgage, given by an indebted executor, is not extinguished by his appointment. It rules, and very properly, we think, that, in equity, such a mortgage will be kept on foot to secure the debt, notwithstanding, by a fiction of law, the debt is considered as paid and as assets in the hands of the executor. Many other instances might be given, of a mortgage kept alive in equity, upon the same principle.
We are also referred to the administration law of 1840, which treats the debt of an executor as assets of the estate, and makes him liable therefor, as for so much money in his hands at its maturity; and it is argued that this provision was enacted in order to introduce a new rule. But it clearly introduced no new rule, as the cases cited abundantly show. It is only one out of many provisions in that act, in which the previous law is embodied in the form of a statute.
*392 It is also urged that the law, as stated in the charge of the court, • would serve to entrap the'bail of an executor, who, confident of his honesty, would willingly become surety for the faithful discharge of his duties, but would shrink from becoming responsible for his debts.
If this were so occasionally, and it could only be so occasionally, the evil would be far less than the contrary doctrine would produce. The safety of the surety is in the penalty of his bond, beyond which he can not be made liable. He knows what that is when he executes the bond, and he has no reason whatever to complain, so long as his responsibility is confined to his own undertaking. But the danger, I apprehend, is altogether imaginary. Bigelow v. Bigelow, was decided in 1830, and ever since then, if not before, the charge complained of has been considered the law of the state; yet *none of us has heard of a surety being entrapped by it. And ever since 1840 it has been a part of our statute law, yet no effort has been made to repeal it. Surely, if it was fraught with unmitigated mischief, as counsel seem to suppose, it would not have stood unquestioned so long.
In Hall v. Pratt, the court held, that “ the debt having once become assets, no act of the parties can return them back to an obligation.” We think this was right, and it disposes of another instruction to the jury, that was prayed for by the defendant, and refused by the court.
We see no reason for granting a new trial, in the fact that the paper marked E, containing a computation of interest, “ was passed to the jury, with the papers in the case.” This should not have been done without leave of the court. Counsel may be allowed, in the discretion of the court, to hand their computations to the jury, as parts of their argument, full opportunity having first been given to the opposite counsel to consider and refute them. But there is no absolute right to do so, and it never should be done without leave. It does not follow, however, that if such a computation get among the papers that are handed to the jury, there must necessarily be a new trial. In the case before us, it does not appear by whom the paper was given to the jury. It may have been handed to them by the defendant’s counsel, or the plaintiff’s, by the court, or some one of its officers. By whomsoever handed, there was no fraudulent intent, no effort to practice upon the jury—at least there is not the slightest evidence of any such purpose. The paper *393 Itself is a mere computation, and if the jury looked at it, which we do not know, they could have regarded it only in the light of a bill of particulars, or claim of the plaintiffs, and not as a piece of evidence. The court refused to admit testimony to prove the correctness of the calculation, holding that the jury must calculate for themselves; but had leave been asked to give the computation to ■the jury, as the mere claim of the plaintiffs, it probably would not have been refused. However, the jury did make their own calculations, as the verdict *shows; and there is no reason to believe, so far as we are enabled to see, that the defendant was prejudiced by the paper in question.
The motions for a new trial and in arrest of judgment must be •overruled, and judgment entered upon the verdict.
Corwin, C. J., dissented.-

 The great length of the arguments forbade their insertion in the report.